**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DALE ARNOLD,
    *Petitioner*

    v.

FREDERICK FRANK,
BRADFORD COUNTY DISTRICT
ATTORNEY and ATTORNEY GENERAL
OF THE COMMONWEALTH OF
PENNSYLVANIA,
    *Respondents*

Civil No. 1:00-CV-0775

(Judge Kane)

Magistrate Judge Smyser

## BRIEF IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

AND NOW comes the petitioner, Dale Arnold, by his attorney Daniel I. Siegel of the Federal Public Defender's Office, and files this Brief in Support of Petition for Writ of Habeas Corpus.

### Procedural History

Dale Arnold, a prisoner in the Pennsylvania state prison system, has filed a petition for writ of habeas corpus under to 28 U.S.C. §2254. He seeks relief from his sentence of life imprisonment, imposed following convictions in Bradford County, Pennsylvania for the crimes of first degree murder, kidnaping, and theft. In his *pro se* petition, Mr. Arnold alleges thirteen grounds in support of habeas corpus relief.

In order to secure habeas relief, the petitioner must demonstrate that he has exhausted all the claims presented in his petition. Pursuant to the Supreme Court's recent decision in O'Sullivan v. Boerckel, 526 U.S. 838, 119 S.Ct. 1728 (1999), the petitioner has the burden of proving that he has exhausted his claims before the highest state court, even if review in that court is discretionary rather than a matter of right. In this regard, undersigned counsel has secured from the county prosecutor a copy of the Commonwealth's direct appeal brief opposing the allowance of appeal in the Supreme Court of Pennsylvania (Exhibit A). As to the state post-conviction appeal, undersigned counsel has secured a copy of Mr. Arnold's petition seeking leave to appeal in the Pennsylvania Supreme Court (Exhibit B). A review of these documents reflects that of the thirteen issues raised in Mr. Arnold's *pro se* petition, only four of those issues are exhausted under the standard announced in O'Sullivan v. Boerckel.

First, Mr. Arnold has exhausted his claim that the state court erred in failing to dismiss the indictment due to pre-accusation delay. This issue was addressed on the merits on direct appeal in a published decision by the Pennsylvania Superior Court. Commonwealth v. Arnold, 331 Pa.Super. 345, 359-64, 480 A.2d 1066, 1073-76 (1984). This issue was preserved in the Supreme Court of Pennsylvania (Exhibit A, page 2), and is presented in the *pro se* petition at Issue No. 1.

Second, petitioner has exhausted his claim that the state court erred in failing to suppress an inculpatory statement made at the visitor's room of the county jail. This issue was addressed on the merits on direct appeal. Commonwealth v. Arnold, 331 Pa.Super. 345, 369-73, 488 A.2d 1066, 1078-79 (1984). The issue was preserved in the Pennsylvania Supreme Court (Exhibit A, page 2), and is presented in the *pro se* petition at Issue No. 8.

Third, petitioner exhausted his claim that the state post-conviction court erred in denying relief on the claim that trial counsel was ineffective in failing to object to the trial testimony of a psychologist. This issue was addressed on the merits in an unpublished Superior Court opinion (Commonwealth Response, Appendix 7), was preserved in the Supreme Court of Pennsylvania (Exhibit B, page 3), and is presented in the *pro se* petition at Issue No. 4.

Fourth, petitioner has exhausted his claim that trial counsel was ineffective in failing to present a diminished capacity defense. This issue was addressed on the merits in an unpublished Superior Court decision (Commonwealth Response, Appendix 7), was properly preserved in the Pennsylvania Supreme Court (Exhibit B, page 3), and is presented in the *pro se* petition at Issue No. 13.

3

Mr. Arnold cannot successfully proceed on a petition which contains both exhausted and unexhausted claims. It is therefore in the petitioner's best interests to withdraw claims 2, 3, 5, 6, 7, 9, 10, 11 and 12. Counsel suggests that Mr. Arnold submit a letter to the Court withdrawing these claims. If the petitioner fails to withdraw these claims, the federal court may dismiss the petition based upon the mixing of exhausted and unexhausted claims. If this should happen, any future petition would likely be barred by the one-year statute of limitation set by the Antiterrorism and Effective Death Penalty Act of 1996. In the hope that Mr. Arnold will withdraw his unexhausted claims, counsel will proceed to a discussion of the facts and the law.

## Statement of Facts

On May 15, 1979, the body of Phillip Evans was discovered at the bottom of an embankment at the "Sheshequin Narrows," an area in Bradford County where the Chemung and Susquehanna Rivers merge (Trial Transcript 36, 82, hereinafter, "Tr."). Mr. Evans had been shot three times and had suffered a fractured neck (Tr. 186).

Sometime on the evening of May 15, 1979, Jane Moran reported to Pennsylvania State Police that she had been present when Phillip Evans had been shot and that after the shooting, the assailant had kidnaped and raped her (Tr. 227, 244, 271). Ms. Moran identified William Marshall as the assailant (Tr. 383). Marshall was immediately taken into custody.

Prior to Mr. Marshal's preliminary hearing, Jane Moran informed the police that she was mistaken in her identification and that Mr. Marshal had not committed the crimes (Tr. 383). The charges were dismissed and Mr. Marshal was released from custody.

After the exoneration of Mr. Marshall, suspicion shifted to the petitioner, Dale Arnold, who was incarcerated at the Bradford County Jail on unrelated charges. On June 3, 1979, a corrections officer at the Bradford County jail overheard a visiting room conversation between Mr. Arnold and Al Raymond, a visitor (Tr. 553-558). In that conversation, Mr. Arnold told Al Raymond to bury the weapon (Tr. 558).

The prison guard contacted the state police, and the state police confronted Al Raymond (Tr. 583, 587). Raymond turned over to the police a sawed-off .22 caliber semi-automatic rifle (Tr. 591). Mr. Raymond indicated that he had previously lent the gun to Dale Arnold (Tr. 524). A state police firearms examiner would later testify that the bullets taken from the body of the victim had been fired from that gun (Tr. 753-54).

In addition to finding the gun, the inculpatory statements made at the visitor's room led the state police to search Dale Arnold's house. During the course of that search, conducted on June 5, 1979, the state police found a clear plastic wallet insert reflecting the New York State driver's license of the deceased victim, Phillip Evans (Tr. 846-47).

In August of 1980, fifteen months after the offenses were committed, Mr. Arnold was charged with first degree murder, kidnaping and theft. Commonwealth v. Arnold, 331 Pa.Super. 345, 353, 480 A.2d 1066, 1070 (1984). The Court of Common Pleas denied a motion to dismiss the charges based upon pre-accusation delay, and also denied a motion to suppress the inculpatory statement made at the county jail. Id. See also Common Pleas Court Order of February 23, 1981, Ruling on Omnibus Pre-Trial Motions.

On March 18, 1981, Mr. Arnold was found guilty of first degree murder, kidnaping and theft, and was sentenced to life imprisonment (Tr. C55, C81). The convictions were affirmed on direct appeal, and the subsequent denial of post-conviction relief was also affirmed on appeal.

## Issues Presented

I. DID THE STATE COURT ERR IN FAILING TO DISMISS THE CHARGES DUE TO PRE-ACCUSATION DELAY?

II. DID THE STATE COURT ERR IN FAILING TO SUPPRESS INCULPATORY STATEMENTS MADE AT THE VISITOR'S ROOM AT THE COUNTY JAIL?

III. DID THE STATE COURT ERR IN FAILING TO GRANT POST-CONVICTION RELIEF ON THE CLAIM THAT COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO THE TESTIMONY OF THE PSYCHOLOGIST?

IV. DID THE STATE COURT ERR IN DENYING RELIEF ON THE POST-CONVICTION CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO PURSUE A DIMINISHED CAPACITY DEFENSE?

**Argument**

I. THE STATE COURT ERRED IN
FAILING TO DISMISS THE CHARGES
DUE TO PRE-ACCUSATION DELAY.

At trial, Dale Arnold presented an alibi defense (Tr. 1307). He testified that on the night of May 14th and 15th, 1979, he hit a deer while driving his truck, and brought the deer over to the house of a friend, Glenn Keane (Tr. 1312-13). He testified that he and Mr. Keane worked through the night cutting up the deer (Tr. 1313-14). Mr. Arnold testified that he did not commit the murder or the kidnaping (Tr. 1331). The record indicates that Mr. Keane died on July 17, 1979, one month after the offenses were committed (Tr. 1410). Charges were not filed until August of 1980, fifteen months after the commission of the crimes. Commonwealth v. Arnold, supra, 331 Pa.Super. at 353, 480 A.2d at 1070. Mr. Arnold moved to dismiss the charges based upon pre-accusation delay, arguing that he was prejudiced by the inability to call his alibi witness, Glenn Keane. By order dated February 23, 1981, the trial court denied the motion to dismiss.

The United States Supreme Court has recognized that delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment. United States v. MacDonald, 456 U.S. 1, 7, 102 S.Ct. 1497, 1051 (1982). "Pre-

8

indictment delay is sufficiently oppressive to warrant dismissal of an indictment where the delay is unreasonable and the defendant is actually and substantially prejudiced in the presentation of her case." United States v. Brockman, 183 F.3d 891, 895 (8th Cir. 1999), cert. denied, 528 U.S. 1080 (2000). It is submitted that Mr. Arnold has met the due process test for securing relief due to pre-accusation delay. It is therefore requested that habeas relief be granted on this issue.

## II. THE STATE COURT ERRED IN FAILING TO SUPPRESS THE INCULPATORY STATEMENT MADE AT THE VISITING ROOM OF THE COUNTY JAIL.

On June 3, 1979, Al Raymond came to the Bradford County Jail to visit Dale Arnold, who was an inmate (Tr. 555). A prison guard was sitting in an office approximately twenty feet away from Raymond and Arnold (Tr. 558). The guard heard Mr. Arnold telling his visitor to bury the weapon (Tr. 558). Acting on this information, state police seized a firearm from Mr. Raymond, who indicated that the gun had previously been lent to Mr. Arnold (Tr. 583-90). Ballistics tests later revealed that the bullets taken from the body of the victim had been fired from that weapon (Tr. 753-54).

9

By order dated February 23, 1981, the Court of Common Pleas denied defendant's motion to suppress the inculpatory statement, along with the evidence derived from that statement. It is submitted that the court's ruling was in error. Pursuant to the Fourth Amendment, a warrantless search or seizure is illegal if the citizen had a legitimate expectation of privacy in the place subject to the search or seizure. Rakas v. Illinois, 439 U.S. 128, 143, 99 S.Ct. 421, 430 (1978). Given that the corrections officer was in an office roughly twenty feet away (Tr. 558), Mr. Arnold had a legitimate expectation of privacy in his discussion with his prison visitor. Because this reasonable expectation of privacy was violated, it is requested that relief be granted on this issue.

> III. THE STATE COURT ERRED IN DENYING RELIEF ON THE CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE TESTIMONY OF A PSYCHOLOGIST.

Jane Moran was the individual who claimed that she was kidnaped and raped by the person who committed the murder. During the course of her trial testimony, Ms. Moran did not identify Dale Arnold as the perpetrator (Tr. 477, *et seq.*).

10

Without objection by the defense, the Commonwealth presented expert testimony on the question of why Ms. Moran was unable to make that identification. In failing to object to this expert testimony, trial counsel rendered constitutionally ineffective assistance.

The Commonwealth presented testimony by Mary Louise Marley, a psychologist (Tr. 477). Ms. Marley testified that between June 26, 1979 and August 14, 1980, she saw Jane Moran on eighteen occasions: thirteen appointments for psychotherapy, one appointment for psycho-diagnostic testing, and four appointments for hypnotherapy (Tr. 487). Ms. Marley testified that Jane Moran's "acute anxiety was causing her to repress some of the memories of the emotions associated with this experience." (Tr. 488). According to the psychologist, Ms. Moran was "fearful if she told and identified the person, the alleged assailant[,] that she would be killed and her family would be killed." (Tr. 496). On redirect examination, the prosecutor engaged in the following exchange with the psychologist:

> Q: Is it possible that Jane could tell the police and tell the jury what happened and be truthful but only go so far and not be able to identify...
>
> A: That is exactly what I think is happening.
>
> Q: Pardon me?
>
> A: I think that is exactly what is happening. I think she is telling the truth. I think she is limited in the extent to which she can identify the man without a reasonable doubt.

Testimony of Mary Louise Marley (Tr. 514). The psychologist concluded her testimony by indicating that in her opinion, Ms. Moran "was indeed telling the truth" when she described the facts of the kidnaping under hypnosis (Tr. 514).

In his state petition for post-conviction relief, petitioner alleged that trial counsel had rendered ineffective assistance in failing to object to the testimony of the psychologist. The Court of Common Pleas rejected this claim, finding that the testimony was admissible under then-existing case law (Commonwealth Response to Federal Petition, Appendix 6, Page 9). The same approach was adopted by the Superior Court in its unpublished opinion affirming the denial of post-conviction relief (Commonwealth Response to Federal Petition, Appendix 7, Page 7).

12

It is submitted that the psychologist's testimony was inadmissible under federal constitutional principles in effect at the time of the trial. As stated by the Supreme Court in United States v. Bailey, 444 U.S. 394, 414, 100 S.Ct. 624, 636 (1980), "[t]he Anglo-Saxon tradition of criminal justice, embodied in the United States Constitution and in federal statutes, makes jurors the judges of the credibility of testimony offered by witnesses." Consistent with this constitutional principle, it is "axiomatic that the expert may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility." United States v. Willis, 322 F.2d 548, 551 (1963), citing United States v. Ward, 169 F.2d 460 (3rd Cir. 1948).

By testifying regarding the reasons why Ms. Moran was unable to identify her assailant, and by giving her opinion that Ms. Moran was truthful in her testimony, the expert witness effectively undermined the constitutional principle that only the jury may weigh the evidence and determine credibility. Because trial counsel was ineffective in failing to object to the psychologist's testimony, and because the defendant was prejudiced by this ineffectiveness, it is requested that relief be granted on this issue.

IV. THE STATE COURT ERRED IN
DENYING POST-CONVICTION RELIEF
ON THE CLAIM THAT TRIAL
COUNSEL WAS INEFFECTIVE FOR
FAILING TO PURSUE A DIMINISHED
CAPACITY DEFENSE.

At trial, Dale Arnold testified and presented an alibi defense (Tr. 1307). He told the jurors that on the night of the murder, he had hit a deer with his truck and then cut up the deer at the home of his friend, Glenn Keane (Tr. 1312-1313). Mr. Arnold testified that he and Mr. Keane worked on the deer carcass until sunrise (Tr. 1314). He denied that he participated in either the shooting or the kidnaping (Tr. 1331).

In his state petition for post-conviction relief, Mr. Arnold argued that trial counsel was ineffective in failing to present a diminished capacity defense. Mr. Arnold testified that such a defense might have been effective, as he was a multiple drug abuser, and he didn't actually remember the events of the night of the murder (Commonwealth Response, Appendix 6, Page 2). This claim was rejected in both the Court of Common Pleas and the Superior Court.

14

It is submitted that the state court erred in denying post-conviction relief on the diminished capacity claim. Given the strength of the physical evidence - - the ballistics test, the victim's ID found at the defendant's house, the petitioner's inculpatory statement requesting that the gun be buried - - the defendant's interests would have been better served by the presentation of a diminished capacity defense. Under <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052 (1984), habeas relief is available where counsel was ineffective and the defense was prejudiced by the ineffectiveness. Because trial counsel was ineffective in failing to present a diminished capacity defense, and because Mr. Arnold was prejudiced by this ineffectiveness, it is requested that the petition for habeas corpus relief be granted.

Respectfully submitted,

Date: Mar. 8, 2001

*Daniel J. Siegel*
DANIEL I. SIEGEL, ESQUIRE
Asst. Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
Attorney for Dale Arnold
Attorney ID # 38910

15

## CERTIFICATE OF SERVICE

I, Daniel I. Siegel, of the Federal Public Defender's Office do hereby certify that on this date I served a copy of the foregoing Brief in Support of Petition for Writ of Habeas Corpus by placing the same in the United States mail, first class in Harrisburg, Pennsylvania addressed to the following:

Todd Hinkley, Esquire
Assistant District Attorney
Bradford County Courthouse
301 Main Street
Towanda, PA 18848

Dale Arnold
Inmate #AK 5044
SCI Huntingdon
1100 Pike Street
Huntingdon, PA 16654-1112

Date: Mar. 8, 2001

DANIEL I. SIEGEL, ESQUIRE
Asst. Federal Public Defender
Attorney for Dale Arnold