JUDGE'S COPY

FILED
HARRISBURG, PA
MAR 08 2001
MARY E. D'ANDREA, CLERK
Per _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DALE ARNOLD, | : | |
| *Petitioner* | : | Civil No. 1:00-CV-0775 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| FREDERICK FRANK, | : | Magistrate Judge Smyser |
| BRADFORD COUNTY DISTRICT | : | |
| ATTORNEY and ATTORNEY GENERAL | : | |
| OF THE COMMONWEALTH OF | : | |
| PENNSYLVANIA, | : | |
| *Respondents* | : | |

## EXHIBITS TO BRIEF IN SUPPORT OF PETITION FOR
## WRIT OF HABEAS CORPUS

AND NOW comes the petitioner, Dale Arnold, by his attorney Daniel I.

Siegel of the Federal Public Defender's Office, and files these Exhibits to Brief in

Support of Petition for Writ of Habeas Corpus.

Respectfully submitted,

Date: _Mar. 8, 2001_

DANIEL I. SIEGEL, ESQUIRE
Asst. Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA 17101
Attorney for Dale Arnold
Attorney ID # 38910

**EXHIBIT   A**

-JAN-26-2001 03:39P FROM:                          TO:17177823881        P:3

IN THE SUPREME COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania

vs.

Dale Richard Arnold

BRIEF IN OPPOSITION TO ALLOWANCE OF APPEAL

from the order of the Superior Court of Pennsylvania
to No. 1717 Phila., 1982,
Affirming the Order of the Court of
Common Pleas of Bradford County, Pennsylvania
Criminal Division, to Nos. 80-1026-A and 80-1026-B

Leonard J. Frawley, Esquire
I.D. 18867
211 Main Street
Towanda, Pennsylvania  18848
(717) 265-2074

AUG. 3 1 1984

JAN-26-2001 03:39P FROM:                                    TO:17177823881           P:4

## SUMMARY

The Superior Court Panel correctly applied the Appellate law.

1.    Prior to trial, the defendant failed to establish through pre-trial publicity a presumption of prejudice.

2.    The defendant failed to show that pre-arrest delay warranted prosecution dismissal.  The facts "weighed" in favor of the Commonwealth.

3.    The defendant failed to establish that the government acquired an inculpatory statement from the defendnat in violation of the defendant's constitutional rights.  In particular, the defendant had no right to counsel, and had no reasonable expectation of privacy when he made the inculpatory statement.

4.    On the basis of the above, the conviction was affirmed.

## I.  PRE-TRIAL PUBLICITY

The general rule is that if a defendant alleges that he was denied a fair trial due to pre-trial publicity, he has the burden of showing "actual" prejudices in the empanelling of the jury Commonwealth v. Hoss,  269 Pa. 195, 364 A.2d 1335 (1976).

There is an exception to the aforementioned general rule where the "...pre-trial publicity so sustained, so pervasive, so inflammatory and so inculpatory as to demand a change of venue without putting the defendant to any burden of establishing a nexus between the publicity and the "actual" jury prejudices" Commonwealth v. Frazier 471 Pa. 121_____,369 A.2d 1224_____(1977).  In such an exceptional situation the circumstances make it apparent that there is a substantial likelihood that there can be no fair trial without change of venue.  As a result, the law "presumes prejudice" Commonwealth v. Casper,  481 Pa. 143, 392 A.2d 287 (1978).

The Petitioner argues that the general rule was improperly employed by the Superior Court Panel because the pre-trial publicity required a presumption of prejudic

In reviewing the Petitioner's claim the Court should consider the actual pre-trial publicity in light of the kinds of pre-trial publicity the Courts have said create presumption of prejudice.

In Commonwealth v. Frazier, Supra, the Court made reference to three kinds of pre-trial publicity that could create a presumption of reference:

(1)  Reference to a defendant's prior record;

(2)  Reference to information received from police that a defendant confessed; and

(3)  Reports that go beyond objective reporting and become emotional and inflammat

It should be noted, however, that even if any of the above three kinds of pre-trial publicity exists, before a presumption of prejudice comes about, it must also be shown that the publicity was so extensive and so pervasive that the community was saturated with it and the pre-trial publicity was so inherently prejudiced that the possibility of fair trial in questionable.  Commonwealth v. Casper, Supra.

The Superior Court Panel's opinion properly applied the law as the panel

found:

(1)  The reporting was factual and objective.

(2)  The reporting did not suggest the defendant was guilty.

(3)  The commission of the prior crimes and most of the reporting of the same took place a substantial period of time prior to the trial.

(4)  The police did not seek to try the case through the news media.

(5)  From the time of the homicide in May 1979 to the time of the defendant's arrest the publicity did not make reference to the defendant.  It involved a description of the murder scene, the deceased wounds and attire, identificat of the investigating team, reports on the search for the murder weapon, a sketch of the assailant's face and the arrest and release of another innocent defendant.

(6)  At the time the defendant was arrested the attorney who represented the innoce defendant earlier arrested, stated that it would be difficult for the Common- wealth to successfully prosecute Arnold.  This statement was made in one of the three County newspapers.

(7)  The newspaper reporting, from the time of the defendant's arrest to the empanelling of the jury, was objective and accurate.

(8)  The reporting was not pervasive.  Of the jurors empanelled, three read nothing about the case, four read some articles but did not recall their content, two jurors read a single article and two read a few articles.  Just one juror believed he retained what he had read and believed the defendant was innocent.

The defendant had the burden of showing a presumption of prejudice Commonwealt

v. Rolison,  473 Pa. 261, 374 A.2d 509 (1971) and he failed to meet his burden.

## II.  PRE-ARREST DELAY

The Petitioner states that the Superior Court Panel opinion at issue indicates

that the lack of an eyewitness to identify a defendant "inherently" permits such a delay

and that such a position abandons the balancing tests enuciated in Commonwealth v. McClo

218 Pa. Super, 230, 275 A.2d 841 (1971) and Commonwealth v. DeRose, 225 Pa. Super., 8,

307 A.2d 425 (1973).

The Petitioner is in error.  The opinion at issue effectively weighs the

various relevant factors and finds that the weight of the factors for the delay justifie

the delay.  In doing so, the Court did not deviate from previous appellate rulings and

in fact applied those rulings appropriately.

Although the delay presumptively prejudiced the defendant in that an alibi
witness died during the period of delay, it must also be considered that:

(1)  The alibi witness was only a corrabative witness;

(2)  The allowance of appeal refers to no prejudice to the defendant caused by
     the delay other than the death of the alleged alibi witness;

(3)  The delay, in theory, could have promoted the Commonwealth case (an eyewit
     unable to identify the defendant was receiving psychological counseling);

(4)  Unlike in the McCloud and DeRose cases, Id, the delay was not intended to
     promote "other" cases; and

(5)  The delay, in theory, could have beneifited the defendant (a psychological
     strong Jane Moran not able to identify the defendant would have been more
     helpful to the defendant than a Jane Moran psychologically weak and unable
     identify the defendant).

The Petitioner, in his Allowance Petition, further alleges that contrary
U.S. v. Lovasco, 431 U.S. 783, 97 S. Ct. 2044, 52 L.Ed.2d 752 (1977) the opinion at
issue found no prejudice was sustained by the defendant by the delay. Again the
Petitioner misreads the Superior Court Panel opinion. The opinion does not state th
the defendant was not prejudiced by the delay and the death of the alleged alibi wit
In fact, the opinion on Page 18 states: "We do not lightly dismiss the loss of his
alleged alibi witness."

The Superior Court Panel found that a cause for the delay was the need fo
further investigation of the case itself. The Commonwealth suggests that the existe
of such a reason for pre-arrest delay may well in and of itself justify the delay.
Court either said or came close to so stating in Commonwealth v. Daniels, 480 Pa.
A.2d _____ (1978).

### III.  STATEMENT MADE BY THE DEFENDANT WHILE IN PRISON

The case at issue was not decided on the premise that because of the need
prison security, an incarcerated defendant has a lesser right to constitutional pro
than a non-incarcerated defendant. As a result, the Petitioner's references to pri
security cases are immaterial.

The Petitioner argues that had the Superior Court Panel properly applied the ruling in U.S. v. Henry, 65 L.Ed.2D 115 (1980), the defendant's statement to Al Raymond and the murder weapon seized as a result of said statement, would have been supressed.

In fact, although the prison guard was solicited by the police to be attentive to remarks made by the defendant, at the time the defendant made the inculpatory statements to Al Raymond, the prison guard was not acting as a government agent. He was merely functioning as a prison guard performing his regular guard duties. He merely overheard the defendant's remarks. U.S. v. Henry, Id. is therefore inapplicable for in Henry the defendant spoke to an active government agent.

Should the Supreme Court conclude, for any reason, that Philip Shamoun was acting as a government agent, the fact nevertheless remains that the Superior Court Panel correctly distinguished the case at issue from U.S. v. Henry, Id.

First:  1)  The Sixth Amendment right to counsel applies only to situations taking place after the criminal prosecution under review has been initiated; 2) U.S. v. Henry, Id. involved a statement made after the prosecution then in question had been instituted; and 3) in the case at issue the statement under scrutiny was made prior to the intitation of the prosecution at issue.

Second:  U.S. v. Henry, Id. stands for the proposition that once the right to counsel attaches, the government cannot deliberately elicit a statement from a defendant without obtaining a prior intelligent and voluntary Waiver of the Right to Counsel. With respect to the case at issue, unlike in U.S. v. Henry, Id., Philip Shamoun did not affirmatively interview Dale Arnold. He did not deliberately elicit information. At most he merely listened.

In U.S. v. Henry, Id. the government created a situation that encouraged the inculpatory statement. Inmates confide in inmates. The informant was an inmate. Additionally, the informant was acting under a contigency fee basis.

In the Arnold case the government did not affirmatively encourage and stage

the conversation at issue.  The defendant relied on his relationship with Al Raymond. Neither the Arnold-Raymond relationship nor Raymond's presence at the jail were the product of police activity.

The Superior Court Panel quite correctly employed the ruling in Hoffa v. United States,  385 U.S. 293, 87 S. Ct. 408, 17 L.Ed.2d 374 (1966) reh. den., 386 U.S. 940, 875 Ct. 970, 17L.Ed.2d 880 (1967). Like Hoffa who erroneously and unreasonably relied in the confidentiality of the informant, Arnold erroneously and unreasonably relied on the security of the visiting area.  Both defendants had no reasonable expectations of privacy.

In conclusion, the Commonwealth requests that the Court not allow the Appeal.

Respectfully submitted:

Leonard J. Frawley, Esquire
I/D.
211 Main Street
Towanda, Pennsylvania  18848
(717) 265-2074

**EXHIBIT   B**

IN THE SUPREME COURT OF PENNSYLVANIA
HARRISBURG, PA.

PETITION FOR ALLOWANCE OF APPEAL

---

| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| Appellee | : PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| DALE ARNOLD | : NO. 1121 HBG 1998 |
| | : |

---

PETITION SEEKING LEAVE TO APPEAL THE JUDGMENT OF
THE SUPERIOR COURT OF PENNSYLVANIA, AFFIRMING.

Helen A. Stolinas, Esq.
Atty #66738
Public Defender
301 Main Street
Towanda, PA   18848
(570) 265-1713

# TABLE OF CONTENTS

**Page**

Reference to the Reports of Opinions Delivered in the Courts Below..........................    1

Text of the Order at Issue......................................................................................    2

Questions Presented for Review............................................................................    3

Statement of the Case...........................................................................................    4-6

Statement of Reasons Relied Upon for Allowance of Appeal.....................................    7-16

Pertinent Statutory Provisions...............................................................................    17

Conclusions.......................................................................................................    18

Appendix "A" -- Order of the Superior Court dated April 14, 1999

Appendix "B" -- Opinion of the Trial Court dated June 26, 1998

Appendix "C" -- Opinion of the Trial Court dated October 7, 1998

## REFERENCE TO THE REPORTS
## OF OPINIONS DELIVERED

1. Opinion of the Superior Court dated April 14, 1999 (attached as Appendix "A")

2. Opinion of the Trial Court dated June 26, 1998 (attached as Appendix "B")

3. Opinion of the Trial Court dated October 7, 1998  (attached as Appendix "C").

## **TEXT OF THE ORDER AT ISSUE**

**ON CONSIDERATION WHEREOF,** it is now hereby ordered and adjudicated by this Court that the judgment of the Court of Common Pleas of Bradford County be, and same is hereby Affirmed.

**BY THE COURT:**

 /s/  **David A. Szewchak**
**PROTHONOTARY**

Dated:  April 14, 1999

## STATEMENT OF QUESTIONS PRESENTED

1.    WHETHER THE COURT ERRED IN DENYING THE PETITION FOR
POST CONVICTION RELIEF ON THE BASIS THAT TRIAL
COUNSEL WAS INEFFECTIVE IN FAILING TO PURSUE A
DIMINISHED CAPACITY DEFENSE.

2.    WHETHER THE COURT ERRED IN DENYING THE PETITION FOR
POST CONVICTION RELIEF ON THE BASIS THAT TRIAL
COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO THE
TESTIMONY OF A PSYCHOLOGIST WHICH BOLSTERED THE
ACCOUNT GIVEN BY THE VICTIM.

## STATEMENT OF CASE

This is an appeal from a criminal case filed in 1980, accusing the Defendant, Dale Arnold, with Homicide, Aggravated Assault, Kidnaping, Robbery and Theft. After jury trial, the Defendant was convicted of Murder in the First Degree, Aggravated Assault, Kidnaping, Robbery and Theft. He is currently serving consecutive sentences of life imprisonment of the Murder, ten to twenty years of the Kidnaping, and one to two years for Theft.

The Defendant has sought relief from these convictions and sentences as follows:

A.    A direct appeal of conviction and sentence to the Superior Court, No. 01717 Phl 82, 6/29/84 Denied.

B.    An appeal of the superior court decision to the Supreme Court, No. 480 Ed. Allocatur Docket 1984 6/21/85 Denied.

C.    A PCHA petition filed February 1990 before the Bradford County Court of Common Pleas, denied November 1990.

D.    A PCCR petition filed December 10, 1990 before the Bradford County Court of Common Pleas. This Petition was returned to the Defendant for amendment, and the Court appointed Stuart Golant, Esq. to represent the Defendant in further proceedings. An amended petition was filed on April 10, 1991, which did not conform to the Court's Order of December 11, 1990. The original petition was denied and dismissed by Order of Court on May 20, 1991. However, present counsel was appointed on February 25, 1994, and directed to file an amendment to the original petition of December 10, 1990. The denial of the amended petition is the subject of this appeal.

4

E.    The Defendant filed an Appeal to the May 20, 1991 order to the Superior
Court, No. 00376 HBG 391, which was dismissed by the Superior Court
on October 6, 1991 as moot and discontinued on February 5, 1992.

F.    The Defendant subsequently filed an amended PCCR petition on March
26, 1993. Said petition was not filed properly, and a hearing that was
scheduled was removed from the Court's calendar. An appeal to the order
striking the order for hearing was filed with the Superior Court No. 383
HBG 93 on June 2, 1993. This appeal was dismissed by the Superior
Court on February 18, 1994 because of failure to file briefs.

The Honorable Evan Williams presided over jury trial in this matter and the
Honorable Jeffrey A. Smith decided the petition for post conviction relief.

A.    Appeal of the denial of the post-conviction motions was filed, and denied
by the Superior Court.

The evidence presented at trial alleged that the victims, Phil Evans and Jane
Moran, were on a date and parked along a rural road (N.T. 234-235). They sat in the car
"making out" when the driver's door opened (N.T. 241).

At some point, Phil Evans was taken out or got out of the vehicle and was shot
(N.T. 244). A short while later, Jane Moran heard something being dragged (N.T. 248).
The next morning the body of Phil Evans was found, apparently having been thrown over
a cliff near the area that they had been parked.

At trial, Jane Moran testified to the events leading up to, during and after the
murder of Phil Evans. After she heard the shot and the dragging noise, she was driven
around for several hours by the assailant on rural roads in the assailant's truck. Her
testimony established a description of the Defendant and details linking the Defendant

5

and his truck to the crime.  At trial she did not identify the Defendant as the assailant (N.T. 284-316).

The Commonwealth called Mary Louise Marley, a clinical psychologist to testify as to whether, based on Jane Moran's mental condition, she would be able to identify the assailant.  The psychologist was called in order to explain that, due to repression, Jane Moran could not identify the assailant, but could describe him (N.T. 478-479).

Ms. Morley testified that Jane Moran was suffering from repression, and also that this condition affected her everyday life (N.T. 491).  She testified to a degree of medical certainty that Jane Moran would not be able to identify the assailant (N.T. 494).  The defense made no objection to the psychological testimony.

Counsel for the Defendant presented an alibi defense at trial, and presented no evidence that the Defendant may have been of diminished capacity due to the use of drugs, alcohol or mental health problems.

## STATEMENT OF REASONS RELIED UPON
## FOR ALLOWANCE OF APPEAL

### I.   THE DEFENDANT HAS RAISED CLAIMS WHICH ARE COGNIZABLE UNDER THE POST CONVICTION RELIEF ACT.

Under 42 Pa. CS §9543(a), in order to be eligible for post conviction relief, the defendant must plead and prove the following:

1.   that he is serving a sentence;

2.   that his conviction was a result of at least one of the circumstances enumerated in the PCRA;

3.   that the allegation of error has not been waived; and

4.   failure to litigate the issue was not a reasonable strategic or tactical decision of counsel.

A claim of ineffective assistance of counsel is cognizable if the petitioner can show that the ineffectiveness so undermined the truth determining process that no reliable determination of guilt or innocence could have taken place  42 Pa. CS §9543(b).In this case, the Defendant alleges that he can meet the burdens set forth in the Post Conviction Relief Act and that he is entitled to relief in the form of a new trial, or in the alternative, a reduction in the grade of his murder conviction from first to third degree.

First of all, it is a matter of record and Mr. Arnold testified that he is serving a life sentence for the offense of murder, so he has clearly met the first prong of the requirements of the Act.

7

The second prong requires the Defendant to prove that this conviction was the result of one of the enumerated circumstances under the Act. In this case, the Defendant alleges his conviction was the result of ineffective assistance of counsel, and that he is innocent of first degree murder. This ineffectiveness stems from his attorneys' failure to present a diminished capacity defense and failure to object to expert testimony which bolstered the victim's testimony. All of these allegations involve the truth determining process, and as proven, are the basis for relief under the Act.

Next, the Defendant must show that the allegation of error was not waived by failure to raise the issues earlier. In this case, the Defendant alleges, in part, that these issues could not have been raised earlier due to ineffective assistance of counsel and his discovery of evidence after trial and appeal. These issues were not previously litigated before the Defendant filed this PCRA petition.

Finally, the Defendant alleges that prior counsel was ineffective, and therefor any failure to raise these issues was a result of that ineffectiveness. In fact, the majority of the allegations involve counsel's failure to raise certain objections or to present certain evidence. Therefore, even since these issues were not raised earlier, failure to raise the issues earlier was not a reasonable tactical decision on the part of counsel. Considering the arguments which follow, these issues should have been raised at trial or direct appeal. The prejudice to the defendant as a result of counsel's acts and omissions demonstrate the lack of a rational, tactical decision by counsel.

## II.    COUNSEL WAS INEFFECTIVE IN FAILING TO PRESENT A DIMINISHED CAPACITY DEFENSE.

The Defendant alleges that after his trial, upon review of the transcripts of the proceedings, he found a great many references to the fact that he had been using drugs and alcohol habitually around the time of the crime. He alleges that this evidence could

have been presented in such a manner as to constitute the defense of diminished capacity, which could reduce first degree murder to third degree murder.

In the sense that evidence of the Defendant using drugs and alcohol was presented at trial, but not in terms of a diminished capacity , the Defendant alleges that this is after-discovered evidence which would have affected the outcome of the trial.

It has been held that voluntary intoxication is a defense to first degree murder in that it may negate the specific intent to kill. Commonwealth v. Campbell, 445 Pa. 488, 284 A.2d 798 (1971). Commonwealth v. Stark, 363 Pa.Super. 356, 526 A.2d 383 (1987). The Defendant alleges that failure to pursue this defense undermined the truth determining process and resulted in his conviction of first degree murder although he was innocent of the charge.

In order to prove that counsel was ineffective in failing to pursue a diminished capacity defense, the defendant must prove: that the underlying claim is of arguable merit; that counsel's performance was unreasonable under the circumstances; and that he was prejudiced by counsel's course of action. Commonwealth v. Kimball, 453 Pa.Super. 193, 683 A.2d 666 (1996), citing Commonwealth v. Pierce, 515 Pa. 153, 527 A.2d 973 (1987).

This is an arguable claim because the defendant discovered after trial that there was evidence that he had been intoxicated around the time of the murder. He testified that at the time of his trial he did not realize the extent or significance of his habitual use of alcohol and drugs. The claim is of merit, because voluntary intoxication is a defense to first degree murder if it negates the specific intent to kill. Commonwealth v. Campbell, 445 Pa. 488, 284 A.2d 798 (1971).

The defendant alleges that counsel's performance was unreasonable because of the failure to present diminished capacity defense. Since diminished capacity could have

9

reduced the degree of the murder conviction, counsel's failure to pursue that defense was not reasonably designed to benefit him.

Finally, the defendant must show prejudice as a result of counsel's ineffectiveness. The failure to present this defense undermined the truth-determining process because it deprived the defendant of a potential defense to the first degree murder charge. Had counsel presented this defense, the outcome of the trial could have been different, and this omission resulted in prejudice.

III.    THE EXPERT TESTIMONY OF PSYCHOLOGIST LOUSE MARLY SHOULD NOT HAVE BEEN ADMITTED BECAUSE IT IMPERMISSIBLY BOLSTERED THE CREDIBILITY OF THE EYEWITNESS. COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO ITS INTRODUCTION.

A.    The testimony bolstered the credibility of the eyewitness.

The first step in analyzing counsel's effectiveness with respect to its failure to call Louise Marley to testify is to determine for what purpose the testimony was elicited. In this case, there was only one eyewitness available to testify at trial, Jane Moran. Ms. Moran was able to generally describe the assailant and his truck. However, she was not able to identify the assailant.

During his offer of proof, the District Attorney, Leonard Frawley indicated:

I would seek to ask this witness that given what occurred during the counseling sessions and given her knowledge that she had arrived at through hypnotic interviews and given her knowledge of the tests that were administered and based on her past experience and education without knowing whether or not Jane had identified an assailant, I would ask her could she, whether or not Jane

10

would be able to identify the assailant.  Her answer would be she would not be
able to identify the assailant. (p. 478)

The psychologist testified, "it was my clinical impression at the very first session
that this young woman had had a very traumatic experience and that she was exhibiting
acute anxiety and that the acute anxiety was causing her to repress some of the memories
of the emotions, associated with this experience." (p. 488).  "... the test results indicated
that she was suffering from a traumatic stress syndrome or a traumatic neuroses that
occurs after an individual has experienced some very severe trauma, real trauma.  It
indicated she was indeed using massive repression as a defense mechanism and that she
was also using reaction formation defenses and denial as major defense strategies." (p.
490-1).

On p. 494 of the transcript, the prosecutor, Mr. Frawley, asked the psychologist to
draw upon her education, experience, and familiarity with Jane Moran's case, and
whether she would be able to render an opinion whether the victim was capable to
identify the assailant.  Ms. Morley testified, "My opinion would be that with the amount
of massive repression that continued to exist in this young woman it would be unlikely
that she could specifically identify the person."  She went on to testify that the reason for
her failure to identify him was due to the fear of dying, of him killing her family.

Therefore, the testimony was introduced to explain the victim's failure to identify
the assailant by citing psychological problems which would prevent her from doing so.
Essentially, this testimony serves to explain a major omission in the evidence from the
eyewitness, while bolstering the remaining portions.  By saying that it is medically
explainable that she would not be able to identify the assailant, the remainder of her
testimony is strengthened.

Based on the offer of proof made by the Commonwealth and the testimony given by the psychologist, the main purpose for this testimony was to excuse deficiencies in the victim's testimony.

It should also be noted that much of this testimony can be viewed as "victim impact" testimony, in that it describes the continuing fear and the impact that the crime continued to have on the victim, in terms of difficulty sleeping and trouble performing well at work.  (p. 491-492).

> B.  The expert testimony was inadmissible for the purpose of bolstering credibility and it was irrelevant for any other purpose.

Presently, it is a well-settled principle that expert testimony cannot be used to bolster the credibility of a witness.  Commonwealth v. Loner, 415 Pa.Super. 332, 609 A.2d 1376 (1992), citing Commonwealth v. Seese, 512 Pa. 439, 517 A.2d 920 (1986); Commonwealth v. Spence, 534 Pa. 233, 627 A.2d 1126 (1993).

The cases dealing with this problem generally arise in two separate types of cases: those involving child sexual abuse, and those in which the defendant wishes to call an expert regarding eyewitness identification.  While this case law has been developing since the time of this trial, it has its roots in cases which were decided prior to the instant trial.

In Commonwealth v. O'Searo, 466 Pa. 224, 352 A.2d 30 (1976), the defendant attempted to present an expert witness, a psychologist, to substantiate the defendant's claim that he harbored no ill will toward the victim and that he shot the victim by accident.  The Court did not permit this testimony for this purpose, because it tended to bolster the credibility of the defendant, which is the sole province of the jury.  In explaining its decision, the Court indicated that "to permit psychological testimony for this purpose would be an invitation for the trier of fact to abdicate its responsibility to

ascertain the facts relying upon the questionable premise that the expert is in a better position to make such a judgment." O'Searo at 32.

The O'Searo decision was later cited in Commonwealth v. Smith, 290 Pa.Super. 33, 434 A.2d 115 (1981). In that case, which was decided by the Superior Court on August 14, 1981, seven months after trial was held in this case, the defendant was not permitted to present an expert witness to testify regarding the ability of identification witnesses to observe the defendant accurately the Court, citing O'Searo, indicated that this testimony involved a matter of common knowledge and invades the province of the jury.

Some more recent cases have also dealt with this rule, particularly in the area of testimony regarding the dynamics of child sexual abuse. Commonwealth v. Purcell, 403 Pa.Super. 342, 589 A.2d 217 (1991), the Court acknowledged that there is a blanket rule that the dynamics of child sexual abuse may not be used to bolster the credibility of an alleged victim of child abuse. This case is particularly notable with respect to the instant case, because it cites O'Searo, and also because it indicates that, even though some of the cited cases were decided after the trial, in that case, the rule was well settled prior to trial. Purcell at 233, fn 7.

While it is acknowledged that the trial in Purcell occurred a few years after the trial in the instant case, the Court's finding that the rule regarding expert testimony being admissible for bolstering the credibility of a witness was well established prior to that date is noteworthy. It has been a well-settled principle well before the trial in this case that expert testimony is only admissible when the subject matter is distinctly related to a science, skill, or occupation beyond the knowledge or experience of the average layman. Where the issue involves a matter of common knowledge, expert testimony is inadmissible. O'Searo, supra, Collins v. Zediker, 421 Pa. 52, 218 A.2d 776 (1966).

13

At the time of trial, the case law was not as extensive as it is currently in this area. However, the law has not really changed in this matter, but rather has been further explained in the more recent cases. Most of the recent cases have their roots in O'Searo, which was decided nearly five years prior to trial in this matter.

Based on this analysis, the testimony of the psychologist was inadmissible because its main purpose was to increase the credibility of the eyewitness by explaining her failure to identify the defendant. This was clearly a matter within the province of the jury.

> C.    Failure to object to the expert testimony constituted ineffective
>        assistance of counsel.

Counsel failed to object at trial to this expert testimony, which, as analyzed above, was inadmissible. This failure constituted ineffective assistance of counsel of so serious a nature as to undermine the truth-determining process of the trial.

In Commonwealth v. Kimball, 453 Pa.Super. 193, 683 A.2d 666 (1996), the Court held that the ineffectiveness standard for purposes of the PCRA are the same as those on direct appeal. In order to prevail on an ineffectiveness claim, the defendant must prove: that the underlying claim is of arguable merit; that counsel's performance was unreasonable; and that the defendant's case was prejudiced as a result. Kimball, citing Commonwealth v. Pierce, 515 Pa. 153, 527 A.2d 973 (1987).

The arguable merit of the defendant's claim has been established earlier in this brief; that the testimony of the psychologist who treated the eyewitness/victim was inadmissible because it bolstered her testimony. This is a claim that has merit as stated above, and is sound basis for relief under the PCRA.

14

The second question is whether counsel's performance was unreasonable. In determining the reasonable basis of counsel's course of action, the Court must decide whether counsel's decisions were reasonably designed to benefit the client. Kimball, supra. In this case, counsel's actions were not reasonable. The failure to object after hearing the Commonwealth's offer of proof regarding the psychologist was a glaring omission and was not the result of any rational strategic decision.

As has been demonstrated, the psychologist's testimony was inadmissible. However, because of counsel's failure to object, the testimony was admitted by the Court. This course of conduct could not have benefitted Mr. Arnold, because it corroborated, explained and otherwise bolstered the testimony of the chief witness. Had defense counsel objected, it is the defendant's contention that the testimony would not have been admitted and the jury would not have heard the testimony which supported that of the witness and invaded the province of the jury to determine credibility.

While it is arguable that there was some value to the defense from this testimony, that argument can be refuted. It is true that the testimony revealed that the witness was unstable and suffered emotional problems. However, this information could have been elicited by the defense during cross examination of Jane Moran. Therefore, that basis was not a rational one in support of failing to object to the expert testimony.

The final element the defendant must prove in order to prevail on an ineffectiveness claim is that he was prejudiced by counsel's unreasonable act or omission. While the Commonwealth may try to claim that "overwhelming evidence" of the defendant's guilt would render any error by counsel harmless, it is important in this case to look to the source of the evidence in support of guilt. Counsel allowed testimony which bolstered the credibility of perhaps the most important Commonwealth witness, the only eyewitness.

Jane Moran testified as to the events on the night of the murder, the description of the assailant, description of the truck and its contents, and several details regarding the crimes committed.  She also identified key pieces of evidence, including the murder weapon, the box that the weapon was carried in and a cooler that was in the assailant's truck on the evening of the murder.

This testimony was certainly important in obtaining a conviction.  Strengthening this witness's testimony certainly affected the outcome of the proceeding.  Counsel's inaction here seriously undermined the truth-determining process, because most of the evidence stemmed from the account given by Jane Moran.  Without the expert's testimony, doubt could have been cast regarding her credibility, due to her lack of ability to identify Dale Arnold as the assailant.  By invading the jury's province on that issue, the expert testimony improperly bolstered her account.  This is certainly serious enough error to constitute prejudice.

16

## PERTINENT STATUTORY PROVISIONS

42 Pa. C.S. §9543.

## CONCLUSION

The Pennsylvania Supreme Court should review the Pennsylvania Superior Court Panel decision of April 14, 1999 which affirmed a decision to deny post-conviction motions.

Respectfully submitted,

/s/ *Helen A. Stolinas, Esq.*
Helen A. Stolinas, Esq`.

18

# CERTIFICATE OF SERVICE

I, Daniel I. Siegel, of the Federal Public Defender's Office do hereby certify that on this date I served a copy of the foregoing Exhibits to Brief in Support of Petition for Writ of Habeas Corpus by placing the same in the United States mail, first class in Harrisburg, Pennsylvania addressed to the following:

> Todd Hinkley, Esquire
> Assistant District Attorney
> Bradford County Courthouse
> 301 Main Street
> Towanda, PA 18848
>
> Dale Arnold
> Inmate #AK 5044
> SCI Huntingdon
> 1100 Pike Street
> Huntingdon, PA 16654-1112

Date: _Mar. 8, 2001_

_____
DANIEL I. SIEGEL, ESQUIRE
Asst. Federal Public Defender
Attorney for Dale Arnold