2 Cx

# ORIGINAL

42
8/6/
~fg

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**FILED**
**HARRISBURG**

| | | |
|---|---|---|
| DALE ARNOLD, | : | |
| Petitioner | : | CIVIL NO. 1:00-CV-0775 |
| | : | |
| v. | : | (JUDGE KANE) |
| | : | |
| | : | (MAGISTRATE JUDGE SMYSER) |
| FREDERICK K. FRANK, et. al., | : | |
| Respondent | : | |

AUG   3 2001

MARY E. D'ANDREA, CLE
Per_____
DEPUTY CLERK

### RESPONDENT'S BRIEF *CONTRA* PETITION FOR WRIT OF *HABEAS CORPUS*

**Introduction**

The petitioner, (hereafter referred to as Arnold) was convicted in state court following a jury

trial of first degree murder, theft, and kidnapping. Life imprisonment, concurrent with unrelated

sentences was imposed. Judgment of sentenced was affirmed by the Superior Court of Pennsylvania

in a published opinion dated June 24, 1984. *Commonwealth v. Arnold*, 331 Pa. Super. 345, 480 A.2d

1066 (1984). His petition for allowance of appeal was denied by the Supreme Court of Pennsylvania

on January 7, 1985. Arnold then filed a state post conviction proceeding alleging two claims of

ineffective assistance of counsel. The trial court denied relief under the state Post Conviction Relief

Act (PCRA). That decision was affirmed on collateral appeal by the Superior Court of Pennsylvania

in an unpublished opinion on April 14, 1999. *Commonwealth v. Arnold*, 738 A.2d 1046 (Pa. Super.

1999). Arnold's petition for allowance of appeal from the Superior Court's determination that

Arnold was not denied effective assistance of counsel was denied by the Supreme Court of

Pennsylvania on August 23, 1999. *Commonwealth v. Arnold*, 560 Pa. 679, 742 A.2d 670 (1999).

The four issues that Arnold now claims entitle him to *habeas* relief have been exhausted in

the state courts. Two of the issues were decided against Arnold on direct appeal and two issues were

decided against Arnold on collateral appeal.  Arnold now contends in this *habeas* petition that he is

entitled to federal *habeas* relief because: 1) the state court should have dismissed the charges due

to a fifteen month pre arrest delay; 2) the state court should have suppressed an   inculpatory

statement Arnold was overheard making to a person visiting him at the prison; and 3) counsel was

ineffective in not objecting to the testimony of a psychologist who examined the surviving kidnap

victim, Jane Moran and in not raising a diminished capacity defense in addition to outright

innocence.  None of these claims merit *habeas corpus* relief.  In opposition to these contentions, the

respondent files this brief *contra* Arnold's petition for writ of *habeas corpus*.

**Discussion**

Since Arnold's petition for writ of *habeas corpus* was filed after April 24, 1996, it is

governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act

("AEDPA"). *Lindh v. Murphy*, 117 S.Ct. 2059 (1997); *Neeley v. Nagle*, 138 F.3d 917, 921; *Holman

v. Wilson*, 158 F.3d 177 (3rd Cir. 1998).  As amended, § 2254 provides, in pertinent part:

> (d)     An application for a writ of *habeas corpus* on behalf of a person in
> custody pursuant to the judgment of state court shall not be granted with respect to any claim
> that was adjudicated on the merits in state court proceedings unless the adjudication of the
> claim . . .
>
> (1)     resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal Law, as determined by the
> Supreme Court of the United States; or
> (2)     resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the state court
> proceeding.

28 U.S.C. § 2254(d).  The United States Court of Appeals for the Third Circuit has observed, in

*dicta*, that amended § 2254(d) "establishes a 'more deferential test'" than the former standard of

review which the federal courts applied to state court judgments reviewed on *habeas corpus*

2

petitions. *Berryman v. Morton*, 100 F.3d 1089, 1103 (3rd Cir. 1996), quoting *Dickerson v. Vaughn*,

90 F.3d 87, 90 (3rd Cir. 1996); *see also Hollman v. Wilson.*

Relying on *Lindh v. Murphy*, 96 F.3d 856 (7th Cir. 1996) (*en banc*), reversed on other

grounds, 117 S. Ct. 2059 (1997), the Third Circuit explained the scope of review under §2254(d)(1)

as follows:

> when the issue does not involve the meaning of the Constitution, but
> rather its application to a particular set of facts, *i.e.*, when a mixed
> question of law and fact is presented, a district court can only grant
> *habeas* relief when the state court's decision "reflects 'an
> unreasonable application' of the law." [*Lindh, supra*] at 869.
> According to the *Lindh* majority, the answer to the question of
> whether the state court's determination of a mixed question of law
> and fact is unreasonable, "requires federal courts to take into account
> the care with which the state court considered the subject." *Id.* at 870.
> The federal *habeas* court must defer to the state court's determination
> of a mixed question of law and fact where that determination is
> reasonable, that is, within the boundaries of the law established by the
> Supreme Court. *Id.* It is only when the federal *habeas* court is
> convinced that the state court's determination of a mixed question of
> law and fact constitutes a grave error can the state court's
> determination be found unreasonable and only then can the federal
> *habeas* court upset a judgment of the state court. *Id.* (§22564(d)(1),
> as amended by the AEDPA, "tells federal courts: Hands off, unless
> the judgment in place is based on an error grave enough to be called
> 'unreasonable.'"). As the *Lindh* majority wrote: The Supreme Court
> of the United States sets the bounds of what is "reasonable"; a state
> decision within those limits must be respected--not because it is right,
> or because federal courts must abandon their independent decision
> making, but because the grave remedy of upsetting a judgment
> entered by another judicial system after full litigation is reserved for
> grave occasions. That is the principal change effected by 2254(d)(1).

*Id. Berryman v. Morton, supra*, at 1103-04.

The *Berryman* court discussed §2254(d)(2) in the following terms:

> In regard to §[2254](d)(2) of the AEDPA, a federal court must
> afford the presumption of the correctness to factual determinations

3

> made by a state court unless the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented" in the state court. The *habeas* statute under which Berryman filed his petition provided that factual findings made by a state court are presumed correct "if fairly supported by the record." *Reese v. Fulcomer*, 946 F.2d [247] at 254 ([(3d Cir. 1997)]. The AEDPA did not dramatically change this provision of *habeas jurisprudence*. After all, a state court determination of a factual issue which was not fairly supported by the record can hardly be said to be a reasonable determination. Nonetheless, we will assume *arguendo* that the AEDPA establishes a more deferential standard which federal *habeas* courts must afford to factual determination of state courts.

*Id.* at 1104-05.

While the court in *Berryman* discussed review of state court factual determinations and the presumption of correctness such determinations are to be afforded under §2254(d)(1), noting that "AEDPA did not dramatically change this provision of *habeas jurisprudence*," the court did not mention that former Section 2254(d), which dealt with the presumption of correctness, had been moved by AEDPA to §2254(e) and now provides:

> In a proceeding instituted by an application for writ of *habeas corpus* by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. §2254(e). *See Carter v. Johnson*, 110 F.3d 1098, 1106 n.9 (5th Cir. 1997) *vacated in light of Lindh v. Murphy, supra,* 118 S. Ct. 409 (1997) (mem.). The Supreme Court has held that the presumption of correctness applies to factual determinations made by state trial and appellate courts. *Sumner v. Mata*, 455 U.S. 591 (1982). Section 2254(e)(1) preserves *Sumner* in that it simply refers to a factual determination "made by a state court" without differentiating between trial or appellate courts.

4

In *Berryman, supra*, the court of appeals analyzed various aspects of claims of ineffective assistance of trial counsel under both §2254(d)(1) and §2254(d)(2). The Eleventh Circuit has established a "three-step process" for evaluating *habeas* petitions under §2254(d)(1). The court said:

> First, the court must "survey the legal landscape," using an inquiry similar to that under *Teague* [*v. Lane*, 489 U.S. 288 (1989)], to ascertain the federal law applicable to the petitioner's claim that is "clearly established" by the Supreme Court at the time of the state court's adjudication. Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court case law, either because the state court failed to apply the proper Supreme Court precedent, or because the state court reached a different conclusion on substantially similar facts. If the state court's decision is not contrary to law, the reviewing court must then determine *whether the state court unreasonably applied relevant Supreme Court authority. The state court decision must stand unless it is not debatable among reasonable jurists that the result of which the petitioner complains is incorrect.*

*Neelley v. Nagle, supra* at 924-25. (emphasis added)

With these standards in mind, Arnold's petition may properly be reviewed. It should be dismissed and relief denied.

Arnold's *pro se* petition for writ of *habeas corpus* before this Court has abandoned and does not pursue most of the issues he previously raised in his direct and collateral appeals in the state court. First, he claims that the state court erred in failing to dismiss the charges due to pre-accusation delay. *See* Common Pleas Court Order of February 23, 1981, Ruling on Omnibus Pre-Trial Motions. Second, Arnold claims he is entitled to relief because the state court failed to suppress inculpatory statements made at the visitor's room at the county jail. *Id.* Third, he claims the state court erred by denying post-conviction relief because trial counsel was ineffective in failing to object to the psychologist's statement. Finally, Arnold claims he is entitled to relief because trial

5

counsel was ineffective for failing to pursue a diminished capacity defense.

**1. Pre-arrest Delay of Fifteen Months**

Arnold claims his Fifth Amendment rights were violated since formal charges were not filed until fifteen months after the murder of Phillip Evans. During this interim period, a supposed alibi witness for the defense, Glenn Keene, died. (N.T. 1410)[1]. It should be noted this alibi witness was only a corroborative witness. Actually, while Keene's death prior to trial was not helpful to Arnold's defense of innocence, it was also not fatal because remaining alibi witnesses such as his live-in mate, Mary Louise Beeman, and his girlfriend, Lulu Felicita could also provide him with an alibi during the time the murder was being committed. *Commonwealth v. Arnold, supra*, at 359, 480 A.2d at 1074. Keene's testimony would have been cumulative of the testimony of Dale Arnold. *Id.* at 363, 480 A.2d at 1076. Also, the delay was not an attempt by the prosecution to gain a tactical advantage over Arnold. The only eyewitness, Jane Moran, had misidentified the assailant on a previous occasion. (N.T. 338). The charges were dismissed and an erroneously identified innocent man was released from custody. Law enforcement officials had to take every reasonable precaution to prevent this from happening again. The question is whether Arnold suffered *substantial* prejudice as a result of the pre-accusation delay.

The Superior Court weighed the reasons for the delay against the prejudice suffered by Arnold:

> We do not lightly dismiss the loss of an alleged alibi witness, but we remind appellant that the delay also served his interests as officials exhausted all means to assure arrest of the correct man. Furthermore, inasmuch as Glenn Keene was a corroborative

---

[1]All references, unless otherwise specified, are to the notes of testimony from Arnold's trial.

witness only, his death did not preclude new and exonerating evidence. Therefore, we conclude that the delay was justified and any prejudice incurred by appellant did not outweigh the benefits of an assiduous investigation.

*Commonwealth v. Arnold, supra.* This determination by the state court is completely in accord with the decisional law of the Supreme Court of the United States. "[t]he Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused *substantial* prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain a tactical advantage over the accused." *Commonwealth v. Arnold*, 480 A.2d 1066, 1073, *quoting United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465. Accordingly, it is apparent that the Superior Court selected and applied clearly established federal law as determined by the United States Supreme Court for adjudicating Arnold's Fifth Amendment Due Process claim. In this regard the state court in Arnold at 362, 480 A.2d 1075 also referred to the factually similar case of United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977) ("hold[ing] that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time"). Since the Superior Court determined the benefit of a thorough and proper investigation outweighed any minimal prejudice suffered by the defendant, the Superior Court correctly applied the on point decisions in *Marion* and *Lovasco, supra.*[2]

Thus, this claim must fail and Arnold is not entitled to *habeas* relief.

## 2. Admission of Arnold's Inculpatory Statement

---

[2]The second exception under §2254 (d)(2) is not applicable because the facts relating to this issue, i.e. the reasons and basis for the investigative delay are not in dispute. Therefore, there can be no "unreasonable determination of the facts" under §2254 (d) (2).

Arnold next claims his Fourth Amendment right against unreasonable searches and seizures was violated by a prison security guard that overheard Arnold instruct a friend, Albert Raymond, who was visiting him at the prison, to bury the murder weapon. (N.T. 558). Acting on this information, police seized a firearm from Raymond. (N.T. 583-90). The Court of Common Pleas denied Arnold's motion to suppress the inculpatory statement and the evidence of the gun, which was seized as result of overhearing Arnold's conversation with Raymond in the visiting room. The issue is whether Arnold had a reasonable expectation of privacy in the visiting room at the Bradford County Jail.

The Superior Court addressed this issue by reasonably applying the United States Supreme Court precedent established in *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.ED2d 374 (1966) and *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 2183, 19 L.Ed. 2d 576 (1967). "Due to the noise from the general population in the cell block, the inmate often spoke loudly to his visitor. He did not occupy a separate room; instead, he stood before the visitor's partition at one end of the cell block . Just as Hoffa had misplaced his trust in the union official, appellant misplaced his trust in the visitors' area of the cell block." *Arnold*, 480 A.2d at 1080. These factual findings by the Superior Court are presumed to be correct. 28 U.S.C.A. §2254 (e) (1). In *Hoffa v. United States*, 385 U.S. 293, 303, 87 S.Ct. 408, 414, the Court held that a guest in a hotel had no reasonable expectation of privacy in statements made to an informant, despite the facts the statements were made in a hotel room. In contrast, *Katz v. United States* 389 U.S. 347, 352, 88 S.Ct. 507, 512, the Court held the defendant had a reasonable expectation of privacy in a telephone booth because he took the affirmative measure of closing the door to exclude the world from hearing his conversation.

8

Here, Arnold had no way to exclude others from overhearing his conversation. Consequently, he certainly could not have a reasonable privacy expectation that his conversation would not be overheard by prison guards who were also present in the same open room, where inmates and visitors often had to shout to be heard over the din of conversation. They were no mechanisms to exclude others like the telephone booth in *Katz*. Clearly, Arnold had no reasonable expectation of privacy in the visiting room of the Bradford County Jail, especially when he voluntarily instructed Raymond to bury the murder weapon in the presence of others merely hoping that his conversation could not be overheard. Since the Superior Court's decision was not contrary to nor did it not involve an unreasonable application of clearly established federal law as announced by the Supreme Court of the United States, the claim is wholly without merit and Arnold is not entitled to *habeas* relief.

### 3. Claims That Trial Counsel Was Ineffective

The Superior Court addressed Arnold's two ineffective assistance of counsel claims under the standard set forth in *Commonwealth v. Pierce*, 515 Pa. 153, 158, 527 A.2d 973, 975 (1987). The Superior Court cited *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326 (1999) which reiterated the *Pierce* standard. *Kimball, supra*, at 304, 306-07, 742 A.2d at 328, 330. See *Response to Petition for Writ of Habeas Corpus and Appendices*, Appendix 7 at 4, filed June 29, 2000. In *Pierce*, the Supreme Court of Pennsylvania said that the rule applied to claims of ineffective assistance of counsel in the Pennsylvania courts since *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967), and reiterated in *Pierce*, is the same as the United States Supreme Court's rule announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Accordingly, it is clear that the Superior Court selected and applied the clearly established federal

9

law as determined by the United States Supreme Court for adjudicating ineffective assistance of counsel claims.

The *Strickland* standard is well-known:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. To establish the prejudice necessary to be successful on an ineffective assistance of counsel claim, a *habeas* petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court reviewing an ineffectiveness claim "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* The "defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*

## A. Failure Of Trial Counsel To Object To Testimony Of The Kidnapping Victim's Psychologist

Arnold claims that counsel should have objected to that portion of the testimony of Jane Moran's psychologist who testified as to how the victim could testify to the circumstances of the crime yet be so psychologically traumatized as to be unable to identify her assailant. This contention was addressed by the Superior Court on collateral appeal in its unpublished memorandum decision dated April 14, 1999. *See Response to Petition for Writ of Habeas Corpus and Appendices,*

10

Appendix 7, filed June 29, 2000.

Preliminarily, the respondent submits that this claim is simply not cognizable for *habeas* review. Arnold complains that counsel was ineffective because he did not object to what he now claims was the erroneous admission of expert testimony. An issue of State evidentiary law is not cognizable for *habeas* relief unless the error deprived the petitioner of a fundamentally fair trial. *Keller v. Larkins*, 89 F.Supp.2d 593, 604 (E.D. Pa. 2000). Since this contention involves an issue of evidentiary law, it is not of constitutional dimension. Thus, even if the Superior Court was wrong in admitting the testimony of the psychologist, federal *habeas corpus* relief could not be granted on this claim. Such a claim based on State evidentiary law is not cognizable in a federal *habeas corpus* petition under 28 U.S.C.A. §§ 2241 (c) (3). *Tillett v. Freeman*, 868 F.2d 106 (3rd Cir. 1989); *accord Clark v. Groose*, 16 F.3d 960, 963 (8th Cir. 1994) (federal *habeas corpus* relief proper only if State court's evidentiary ruling "'infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process'"). Arnold's brief does not show how this evidentiary ruling was so prejudicial as to deny him a fair trial. Arnold simply cites *dicta* in *United States v. Bailey*, 444 U.S. 394, 414 (1980) which is not a *habeas corpus* case and has nothing to do with the evidentiary issue at hand.

More to the point as noted in *Commonwealth v. Gallagher*, 519 Pa. 291, 547 A.2d 355, 360-61 (1988), numerous state courts as part of their evidentiary jurisprudence permit psychological testimony to explain victim behavior from trauma as it relates to the ability of a sexual assault victim to perceive, recall, or relate. *See e.g. State v. Staples*, 120 N.H. 278, 415 A.2d 320 (1980); *State v. Harwood,* 45 Or. App. 931, 609 P.2d 1312 (1980); *State v. Pettit*, 66 Or. App. 575, 675 P.2d 183 (1984); *State v. Middleton*, 294 Or. 427, 657 P.2d 1215 (1983); and *Smith v. State*, 100 Nev. 570,

11

688 P.2d 326 (1984). These cases serve to emphasize that this issue is a matter of State evidentiary law that varies among the states and raises no constitutional issue necessary for *habeas* review.

In the instant case, the admission of the psychologist's testimony as to her opinion that the trauma of the rape prevented the victim from identifying her assailant did not fundamentally deprive Arnold of a fair trial for the simple reason that the victim could not testify that Arnold was her attacker. Moreover, it was brought out at the trial that not only did the victim fail to identify Arnold in two separate pre trial photographic array identification proceedings, but also that she erroneously previously named another person as her attacker. *Arnold, supra*, at 356, 480 A.2d at 1072. The defense in this case never contended that Evans wasn't murdered or that Moran, the surviving victim, was not raped and kidnaped by an unknown male. The defense was simply that Arnold was not the killer or the rapist. Consequently, even if the Superior Court's determination was error as a matter of State evidentiary law, Arnold suffered no prejudice in the context of this case.

This claim is not cognizable for federal *habeas corpus* review.

Turning to the merits, assuming arguendo that this Court finds this issue to be cognizable for *habeas* review, the Superior Court noted in its memorandum opinion, (*Response to Petition for Writ of Habeas Corpus and Appendices,* Appendix 7 at 7, filed June 29, 2000) that the first case which held that psychological testimony might not be admissible for the purpose for which it was used in this case occurred in 1988. *See Commonwealth v. Gallagher*, 519 Pa. 291, 547 A.2d 355, 359 (1988) ("We therefore hold that expert testimony on rape trauma syndrome should not have been admitted in the trial of *this* case") (emphasis added). In *Gallagher*, the defendant, unlike Arnold, clearly suffered prejudice because the sexual assault victim identified the defendant at trial and the psychological testimony was used to bolster the victim's in court identification where she had

12

previously failed to pick out the defendant on two prior occasions. *Id.,* 547 A.2d at 356.

Arnold's trial took place seven years before *Gallagher* was decided. The Superior Court noted that counsel can not be condemned as ineffective "for failing to anticipate changes in the law or to raise claims based on future decisions." *See Response to Petition for Writ of Habeas Corpus and Appendices,* Appendix 7 at 7. This determination by the State court is completely in accord with the decisional law of the Supreme Court of the United States. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, *viewed as of the time of counsel's conduct.*" *Strickland v. Washington, supra,* at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695 (1984) (emphasis added); *see also Lockhart v. Fretwell,* 506 U.S. 364, 371-72, 113 S.Ct. 838, 844, 122 L.Ed.2d 180, 190 (1993).

Nor under *Strickland's* deficient representation component can it be concluded that trial counsel's failure to object to this testimony was not rationally based. Unlike the situation in *Gallagher, supra,* the victim in this case could not say that Arnold was her assailant and the murderer of her boyfriend. There was no reason for trial counsel to object since Arnold was not disputing that a crime had occurred, but merely that he was not the perpetrator.

Accordingly, it is clear that the Superior Court selected and applied the clearly established federal law as determined by the United States Supreme Court for adjudicating this ineffective assistance of trial counsel claim.

## B. Failure Of Trial Counsel To Present A Defense Of Diminished Capacity

Arnold testified and presented an alibi defense. (N.T. 1307). He denied participating in the shooting. He told the jurors that on the night of the murder, he hit a deer with his truck and then cut the deer up at the home of his friend, Glenn Keene. (N.T. 1312-1313). Arnold now claims that

13

counsel was ineffective for failing to pursue a diminished capacity defense.

Diminished capacity is an extremely limited defense. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 28, A.2d 937, 943 (1982). A defendant who raises a diminished capacity defense concedes general criminal liability but challenges his capacity to premeditate and deliberate at the time of the criminal act. *Commonwealth v. Walzak*, 468 Pa. 210, 360 A.2d 914 (1976). Diminished capacity is antagonistic with an actual innocence defense because a diminished capacity defense implies that the defendant was present and participated in the criminal act alleged. *See*, e.g. *Commonwealth v. Cross*, 634 A.2d 173, 175 (Pa.1993). Thus, diminished capacity would have been antagonistic to the alibi Dale Arnold told to the jury.

Counsel was not ineffective for failing to pursue a diminished capacity defense. The alibi defense, if successful, would have resulted in an outright acquittal for Arnold. The defense of diminished capacity would have reduced the first degree murder to third degree murder. Despite the physical evidence, counsel's trial strategy was rationally based since the only eyewitness to the crimes was unable to identify Arnold as the perpetrator. Certainly this fact, along with the alibi Arnold told to the jury, provided sufficient reason to pursue a defense of actual innocence. In any case, in analyzing an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all of the circumstances. *Strickland*, 466 U.S. at 694. The factual circumstances of this case certainly make the alibi defense a reasonable defense. Admitting these horrendous acts, but seeking to reduce the degree of guilt due to a dubious claim of intoxication sufficient to convince the jury that this case would rise only to third degree murder, would have totally eviscerated Arnold's claim of innocence to which he testified under oath. The Superior Court in rejecting Arnold's contention in the State court cited the case of *Commonwealth*

14

*v. Laird*, 555 Pa. 629, 726 A.2d 346 (1999). *Laird* applied the *Pierce* standard which is the same

as the *Strickland* standard of evaluating ineffective assistance of counsel to find that counsel cannot

be deemed ineffective for failing to present a diminished capacity defense to first degree murder

where the defendant takes the stand at his trial and tells the jury he did not commit the murder. In

this regard the Superior Court citing Laird stated the following in pertinent part:

> In the case at bar, [Arnold] has not ever admitted criminal liability. He
> acknowledged at his hearing before the trial court that he testified to an alibi at trial.
> As did the petitioner in *Laird*, [Arnold] is asking the court to assume he committed
> perjury at his trial. Trial counsel cannot be found ineffective for failing to pursue a
> trial strategy that is in direct conflict with his client's sworn testimony. We therefore
> conclude this argument has no merit.

*Response to Petition for Writ of Habeas Corpus and Appendices,* Appendix 7 at 5 (internal

quotations and citation omitted).

Accordingly, it is clear that the Superior Court selected and applied the clearly established

federal law as determined by the United States Supreme Court for adjudicating this ineffective

assistance of trial counsel claim.

15

**Conclusion**

Since Arnold has not rebutted the presumptive correctness of the factual determinations by the Superior Court, and since the federal claims adjudicated on their merits by the Superior Court are not contrary to, or an unreasonable application of any Supreme Court decision, and are not based on any unreasonable determination of the facts in light of the State court evidentiary record, Arnold's petition should be dismissed, the relief he requests should be denied, and no certificate of appealability, 28 U.S.C. §2253(c), should issue.

Respectfully submitted,

D. Michael Fisher
Attorney General

BY: *Ronald T. Williamson*

Ronald T. Williamson
Senior Deputy Attorney General
Attorney I.D. No. 22768

Office of Attorney General
Appeals and Legal Services Section
2490 Boulevard of the Generals
Norristown, Pennsylvania 19403

Dated: August 3, 2001

16

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DALE ARNOLD,  
                Petitioner      :     CIVIL NO. 1:00-CV-0775  
                       :  
           v.             :     (JUDGE KANE)  
                       :  
FREDERICK FRANK, et al.,      :     (MAGISTRATE JUDGE SMYSER)  
                Appellant      :

## CERTIFICATE OF SERVICE

**AND NOW**, this 3rd day of August 2001, I, Ronald T. Williamson, Senior Deputy Attorney General, counsel for the respondent, hereby certify that I served the foregoing Respondent's Brief *Contra* Petition for Writ of *Habeas Corpus* by causing a copy of the same to be placed in the United States mail, first class postage prepaid, at Norristown, Pennsylvania, addressed to counsel for petitioner as follows:

**Service by first class mail**  
**addressed as follows:**

Daniel I. Siegel, Esquire  
Assistant Federal Public Defender  
100 Chestnut Street, Suite 306  
Harrisburg  PA    17101

**Ronald T. Williamson**  
**Senior Deputy Attorney General**  
**Attorney I.D. No. 22768**

Office of Attorney General  
Appeals and Legal Services Section  
2490 Boulevard of the Generals  
Norristown PA   19403  
(610) 631-6554

Dated:  August 3, 2001