*sel ad*

43
9/7/01
ASM

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DALE ARNOLD,                          :        CIVIL NO. **1:00-CV-0775**
                                      :
             Petitioner              :        (Judge Kane)
                                      :
        v.                            :        (Magistrate Judge Smyser)
                                      :
KENNETH D. KYLER,                     :
             Respondent              :

**FILED**
**HARRISBURG, PA**

## REPORT AND RECOMMENDATION

SEP 0 7 2001

MARY E. D'ANDREA, CLERK
PER_____
DEPUTY CLERK

On April 28, 2000, the petitioner, a state prisoner

proceeding *pro se*, filed a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 and a motion for the appointment

of counsel.  The petitioner challenges his 1981 convictions in

the Court of Common Pleas of Bradford County, Pennsylvania for

first degree murder, theft and kidnapping.   The background of

those convictions as set forth by the Pennsylvania Superior

Court is as follows:

> Jane Marie Moran, a then recent graduate of the
> respiratory therapy program at Robert Packer Hospital
> in Bradford County, Pennsylvania, met Phillip Evans,
> a security guard at the hospital, at 11:00 p.m. on
> May 14, 1979.  Miss Moran was a resident in the
> nurse's dormitory located next to the hospital.   Mr.
> Evans was completing his workshift when he met Miss

AO 72A

Moran at the guard's station.  The couple had planned
a date.

Evans and Moran departed in Evan's automobile
and drove to a convenience store in Waverly,
Pennsylvania.  Following their purchase of a six-pack
of beer, the couple proceeded to the "Sheshequin
Narrows" in Sheshequin Township, Bradford County.
The "Narrows" is that section of Legislative Route
08077 which cuts into a steep hillside on the east
side of the Susquehanna River at a point where the
Chemung and Susquehanna Rivers merge.  At one
particular place on the river side of the "Narrows"
exists a twelve-foot gravel shoulder.  Evans parked
his vehicle on this shoulder so that he and Miss
Moran could enjoy the view of the rivers two hundred
feet below.  They drank beer and listened to music as
they sat in the automobile.

Sometime after midnight on May 15, 1979, while
Evans and Moran remained in the parked vehicle at the
"Narrows", the driver's door was abruptly and
unexpectedly opened by appellant, Dale Richard
Arnold.  Appellant pulled Evans from the vehicle,
shot him several times with a sawed-off .22 caliber
rifle, dragged him across the shoulder of the road
and pushed him over the embankment.  Evan's body was
discovered later that day lying a few feet from the
river.  An autopsy disclosed gunshot wounds in his
neck, right chest wall, left arm, left lower leg,
left knee and diaphragm.  His neck was also broken at
the second cervical vertebra.

Immediately following his disposal of the body,
appellant entered Evan's car and drove it a short
distance.  Moran was lying in the backseat at his
direction.  Having driven Evan's car for a few
moments, appellant stopped and ordered Moran to get
out and accompany him.  With the sawed-off rifle in
hand, he walked with Moran several hundred yards to
his two-tone blue, Ford pick-up truck.  Both entered
the truck, and appellant drove back to Evan's car.
As directed, Moran lay across the seat of the

AO 72A
(Rev.8/82)

truck.  Appellant then removed a Pioneer FM radio/cassette tape player from the murder victim's car.

Appellant re-entered the truck and began a nightlong period of driving on isolated roads.  He informed Moran that he was seeking the "boss'" house. If the "boss" were found, appellant would release her to him, at which time she would be injected with narcotics and compelled to join his harem.  Moran repeatedly expressed her desire to go home.

Following one hour of driving, appellant removed Moran's clothing and compelled her to engage in sexual intercourse in the truck.  Thereafter, he drove again, commenting on his inability to find the "boss'" house and the alternative of driving Moran to New York City where she could work as a prostitute. Appellant stopped the truck a second time, again engaging in sexual intercourse against Moran's will.

As daylight approached on May 15, 1979, appellant promised to drive Moran to Robert Packer Hospital, providing she remained quiet about the evening's events and released her name, address and telephone number to him.  He informed her that he had "men" on the Sayre police force and threatened to kill her if she reported what had transpired to authorities.  Miss Moran provided the requested information and pledged her confidence.  Appellant did in fact release her at the hospital at 8:00 a.m. on May 15, 1979.

Moran reported to law enforcement officials later that day;  however, appellant was not arrested until August, 1980, fifteen months following the commission of the crimes.  The investigation proved lengthy and complicated as a result of Miss Moran's need of psychiatric counseling.  The night-long episode left her mentally afflicted, which particularly affected her ability to identify appellant as the assailant.

Appellant was charged with murder of the first, second and third degrees, aggravated assault,

3

> terroristic threats, kidnapping, robbery, theft by
> unlawful taking or disposition, crimes committed with
> firearms and prohibited offensive weapons.
>      On March 19, 1981, following a jury trial in
> Bradford County, appellant was found guilty of first-
> degree murder, theft and kidnapping.

*Commonwealth v. Arnold*, 480 A.2d 1066, 1069-1070 (Pa.Super.Ct.

1984).


     By an Order dated May 9, 2000, we gave the petitioner the

notice required by *Mason v. Meyers*, 208 F.3d 414 (3d Cir.

2000), and ordered the petitioner to inform the court on or

before May 29, 2000, whether he wants to have his petition

ruled upon as filed or he wants to withdraw his petition and

file one all-inclusive petition within the one-year statutory

period prescribed by AEDPA in 28 U.S.C. § 2244(d).   By a

letter dated May 15, 2000, the petitioner informed the court

that he wishes to have his petition ruled upon as filed.


     By an Order dated May 18, 2000, the respondents were

ordered to respond to the petition on or before June 7, 2000.

The respondents requested and received an extension of time

until June 28, 2000, to file an answer to the petition.   On

4

June 29, 2000, the respondents filed an answer to the petition.

The petitioner presented thirteen claims in his petition. The respondent argued that at least four of the claims presented have not been presented to the state courts and that therefore the petition should be dismissed.

By an Order filed on July 20, 2000, we noted that because it appears that any second Post Conviction Relief Act petition filed by the petitioner would be untimely, *see 42 Pa.C.S.A. §9545(b)(petition must be filed within one year of the date judgement becomes final)*, it is not clear that there are any state remedies left for the petitioner to exhaust, and that it appears that the petitioner has procedurally defaulted those claims.   We appointed counsel to represent the petitioner. Counsel for the petitioner was ordered to file, within thirty days, a brief addressing, at a minimum, the following: whether and how each claim has been exhausted in the state courts; whether any claims are procedurally defaulted; if any claims are procedurally defaulted, whether the petitioner can

5

establish "cause and prejudice" or a "fundamental miscarriage

of justice" to excuse the default.  It was further ordered that

if the petitioner contends that the petition does not contain

any unexhausted claims, the brief should also address: whether

a hearing is requested in federal court to develop a factual

basis to support the claims; if a hearing is requested, how the

claim relies on a new rule of constitutional law, and how the

claim relies on a factual predicate that could not have been

previously discovered with due diligence (*see 28 U.S.C. §

2254(e)(2)*); and whether and how the state court decision of

each claim was contrary to, or involved an unreasonable

application of, clearly established federal law as determined

by the Supreme Court of the United States or resulted in a

decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the state court

proceedings (*see 28 U.S.C. § 2254(d)*).  The respondent was

ordered to file a brief in opposition to the petitioner's brief

within fifteen days after the petitioner's brief is filed, and

the petitioner was permitted to file a reply brief within ten

days of the filing of the respondent's brief in opposition.

By an Order dated September 27, 2000, the Clerk of Court of Bradford County, Pennsylvania was ordered to file a copy of the trial transcript in *Commonwealth v. Arnold*, Bradford County Criminal Case No. 1026 of 1980.  The Clerk of Court of Bradford County did not file the transcript.  By an Order dated November 28, 2001, the Clerk of Court of Bradford County, Pennsylvania was again ordered to file a copy of the trial transcript in *Commonwealth v. Arnold*, Bradford County Criminal Case No. 1026 of 1980.  Still the Clerk of Court of Bradford County did not file the transcript.  On January 11, 2001, the respondent filed a copy of the state court transcript.

After requesting and receiving extensions of time, the petitioner filed a brief in support of the petition on March 8, 2001.  On March 19, 2001, the petitioner filed a document indicating that he is withdrawing claims 2, 3, 5, 6, 7, 9, 10, 11, and 12 of his petition.  After requesting and receiving extensions of time, the respondent filed a brief in opposition

7

to the petition on August 3, 2001.  No reply brief has been
filed.

28 U.S.C. § 2254(d) precludes federal habeas corpus relief
with respect to any claim that was adjudicated on the merits in
state court unless the state courts' adjudication

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States;  or
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of
> the evidence presented in the State court proceeding.

Under the "contrary to" clause, a federal habeas court may
grant the writ if the state court arrives at a conclusion
opposite to that reached by the Supreme Court on a question of
law or if the state court decides a case differently than the
Supreme Court has on a set of materially indistinguishable
facts.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  Under
the "unreasonable application" clause, a federal habeas court
may grant the writ if the state court identifies the correct
governing legal principle from the Supreme Court's decisions
but unreasonably applies that principle to the facts of the

8

prisoner's case. *Id.* at 413.  "A federal habeas court may not
grant relief under the "unreasonable application" clause unless
a state court's application of clearly established federal law
was objectively unreasonable; an incorrect application of
federal law alone does not warrant relief." *Keller v. Larkins*,
251 F.3d 408, 418 (3d Cir. 2001).

In conducting a habeas analysis, we must afford state
courts' factual findings a presumption of correctness, which
the petitioner can overcome only by clear and convincing
evidence.  See 28 U.S.C. s 2254(e)(1).  This presumption
applies to the factual determinations of both state trial and
appellate courts. *Duncan v. Morton*, 256 F.3d 189,196 (3d Cir.
2001).

The petitioner's first claim is that the trial court erred
by failing to dismiss the charges against him due to pre-
accusation delay.

9

The petitioner testified at trial that he did not shoot Phillip Evans or kidnap Jane Moran. (Tr. 1331). The petitioner presented an alibi defense. He testified that on the night of May 14th and 15th, 1979, he hit a deer while driving his truck, that he brought the deer to the house of Glenn Keane, and that he and Mr. Keane cut up the deer that night. (Tr. 1312-1314). Mr. Keane died on July 17, 1979. (Tr. 1410). The petitioner was not arrested until August of 1980. *Commonwealth v. Arnold, supra,* 480 A.2d at 1070. The petitioner argues that he was prejudiced by the pre-arrest delay due to the intervening death of Mr. Keane who could have corroborated his alibi.

Pre-arrest delay may result in a due process violation. To establish such a due process claim, a petitioner must show both (1) that the delay between the crime and arrest actually prejudiced his defense; and 2) that the government deliberately delayed bringing the charges in order to obtain an improper tactical advantage or to harass him. *United States v. Marion*, 404 U.S. 307, 324 (1971); *United States v. Lovasco*, 431 U.S. 783, 789-90, 795-96 (1977). Delay occasioned by investigative

10

needs does not violate due process. *Lovasco, supra,* 431 U.S. at

796 ("We therefore hold that to prosecute a defendant following

investigative delay does not deprive him of due process, even

if his defense might have been somewhat prejudiced by the lapse

of time.").

The Superior Court of Pennsylvania reasoned and decided as

follows with regard to this claim:

> Next, appellant contends that it was error to
> deny his motion to dismiss the charges on the basis
> of the fifteen-month delay between the crimes and
> arrest.  This delay allegedly weakened his defense
> due to the death of his alibi witness, Glenn Keene,
> prior to trial.  At the pre-trial hearing on this
> motion to dismiss, appellant testified that upon
> completing work at 11:00 p.m. on May 14, 1979, he
> drove to his Litchfield Township home.  He was
> greeted at 11:30 p.m. by his live-in mate, Mary
> Louise Beeman, who was also the mother of his two
> sons.  Appellant ate dinner, but did not remain at
> home. Instead, he drove to Sayre, Pennsylvania, to
> visit his girlfriend, Lulu Felicita, at her place of
> employment. Following a brief visit, he began his
> journey to home.  While traveling on Mt. Pleasant
> Road, appellant allegedly struck and killed a deer.
> He stopped, placed the deer on the bed of his pick-up
> truck and drove to Glenn Keene's house located on Mt.
> Pleasant Road.  Appellant testified that he gave the
> deer to Mr. Keene and that the two men spent the rest
> of the evening until sunrise removing the entrails
> and hide and cutting the meat.  Appellant could not
> recall the date of Mr. Keene's death;  however, he

11

believed that his death occurred prior to November,
1979.

Passage of time between crime and arrest is not
a matter within the context of Sixth Amendment speedy
trial rights.   Only a formal indictment, information
or arrest, any of which binds an accused to respond
to a criminal charge, invokes Sixth Amendment
privileges.   Once a citizen's liberty is restrained,
his speedy trial rights are activated. United States
v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468
(1971).

The primary safeguard against undue delay
between crime and arrest is the applicable statute of
limitations.   United States v. Ewell, 383 U.S. 116,
86 S.Ct. 773, 15 L.Ed.2d 627 (1966).   On occasion,
however, the statute of limitations does not provide
the necessary protection.   This is particularly true
with murder charges where there is no limitations
period. Our United States Supreme Court commented on
those occasions where the statute of limitations has
not expired, yet prejudice is inflicted on the
accused:

> .... it is appropriate to note here that
> the statute of limitations does not fully
> define the appellees' rights with respect
> to the events occurring prior to
> indictment.   Thus, the Government concedes
> that the Due Process Clause of the Fifth
> Amendment would require dismissal of the
> indictment if it were shown at trial that
> the pre-indictment delay in this case
> caused substantial prejudice to appellees'
> rights to a fair trial and that the delay
> was an intentional device to gain tactical
> advantage over the accused.

United States v. Marion, 404 U.S. at 324, 92 S.Ct. at
465, 30 L.Ed.2d at 480, 481.

This Court in Commonwealth v. McCloud, 218
Pa.Super. 230, 275 A.2d 841 (1971), reviewed the
constitutionality of an eight-month delay between the

12

defendant's use and sale of narcotics and his arrest.
The McCloud court studied several decisions of our
United States Supreme Court and Circuit Courts of
Appeal and gleaned therefrom that identification
testimony and the effect of the pre-arrest delay on
the identification are dispositive factors in
determining whether the delay impinged upon the
accused's due process rights.  Consequently, the
McCloud court extracted and adopted a two-part
analysis of the effect of pre-arrest delay.  First,
"a proper balance must be struck between defendant's
right to identification testimony of probative value
and the public's right to effective police
detection..."  Id. at 235, 275 A.2d at 844.
Secondly, "the reasonableness of the delay
necessitated by the conduct of an effective
investigation" must be weighed against any prejudice
suffered by the defendant.  Id. at 236, 275 A.2d at
844.

    The McCloud test was utilized in Commonwealth v.
Barnes, 237 Pa.Super. 407, 352 A.2d 107 (1975), where
this Court considered the propriety of a six-month
delay between the crime and arrest.  First, the
Barnes court noted the definite identification of the
defendant by the narcotics' agent.  The
identification was uncorroborated, but it was
unwavering and independent of the agent's records.
Secondly, the informant's unavailability for trial
was not so prejudicial to the defendant as to
outweigh the Commonwealth's interest in the delay.
It was noted that the absent informant could affect
credibility only of other witnesses; the defendant
agreed that the informant's testimony would offer no
fresh evidence.  Accordingly, the Barnes court held
that the delay did not adversely affect the
defendant's due process rights.

    A result more akin to the instant matter was
reached in United States v. Lovasco, 431 U.S. 783, 97
S.Ct. 2044, 52 L.Ed.2d 752 (1977), reh. den., 434
U.S. 881, 98 S.Ct. 242, 54 L.Ed.2d 164 (1977).

13

There, the offenses of possessing firearms stolen from the United States mails and dealing in firearms without a license occurred eighteen months prior to indictment. The defendant complained that two defense witnesses, who could support his position that several firearms were purchased from individuals without connection with the postal service, died during the eighteen-month interim. The Lovasco court conceded that the death of two witnesses may have weakened the defendant's case; nevertheless, the reasons for the delay outweighed any prejudice sustained.

Lovasco made it clear that prosecutors are not obligated to arrest and file charges at the moment probable cause exists and prior to their belief that there is sufficient evidence to prove the suspect's guilt beyond a reasonable doubt. In noting the advantages of purposeful delay for the prosecution, suspect and judiciary, the Lovasco court commented:

> In our view, investigative delay is fundamentally unlike delay undertaken by the Government solely 'to gain tactical advantage over the accused,' United States v. Marion, 404 U.S. at 324, 92 S.Ct. at 465, precisely because investigative delay is not so one-sided. Rather than deviating from elementary standards of 'fair play and decency', a prosecutor abides by them if he refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Penalizing prosecutors who defer action for these reasons would subordinate the goal of 'orderly expedition' to that of 'mere speed,' Smith v. United States, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041 (1959). This the Due Process Clause does not require. We therefore hold that to

14

>           prosecute a defendant following
>           investigative delay does not deprive him of
>           due process, even if his defense might have
>           been somewhat prejudiced by the lapse of
>           time.

(Emphasis added).  431 U.S. at 795, 796, 97 S.Ct. at
2051, 2052, 52 L.Ed.2d at 762, 763.

Here, the following evidence was accumulated
within two months of the crime: Jane Moran's
composite of the assailant, the murder weapon,
Phillip Evan's automobile, Phillip Evan's empty
plastic wallet inserts, Phillip Evan's FM
radio/cassette tape player, and Jane Moran's
identification of a red and white ice chest and blue
flag from appellant's truck. The accumulation of this
evidence made appellant a suspect, but it was not
enough to overcome the apprehension of investigating
officers.  This apprehension was primarily due to
Jane Moran's emotional affliction.  She retracted her
identification of William Marshall as the assailant
two weeks following his arrest.  This prompted the
dismissal of charges.  It also dictated the
investigators' strategy of giving Miss Moran ample
time to recover so that her next identification would
be positive and correct.

Jane Moran made no progress through December,
1979 despite psychiatric care.  Her attempts to
identify appellant from photographic arrays failed on
at least two occasions.  Chief investigating officer
Lt. Edward Bloomer called Miss Moran and her mother
monthly to check her progress.  His conversations
with them and Dr. Marley left him with the impression
that Moran involuntarily refused to identify
appellant for fear of reprisal.

Miss Moran sustained another blow to her frail
mental condition in 1980 when her fiance died of an
epileptic seizure.  Although she responded adequately
to professional treatment in 1980 to enable her to
testify at pre-trial hearings and trial, she never
issued a positive identification of appellant.

15

Lt. Edward Bloomer of the Pennsylvania State
Police explained why appellant's arrest was delayed:

> I felt then and I feel now that Jane Moran
> as our witness, as a witness in this case,
> she identified the wrong person at one time
> and since then she was under mental stress
> and strain.  We were waiting for her to
> give her an opportunity not only mentally
> but physically to be able to correctly
> identify the person responsible.  The
> reason for the delay was strictly giving
> her an opportunity to be able to be
> treated, ....

(N.T., December 18, 1980, p. 90).

The decision to finally arrest appellant was
based upon the investigating team's consensus that
Jane Moran might never positively identify appellant
and that arrest and prosecution should proceed with
the accumulated evidence alone.

It is apparent that the prosecution was not
utilizing the fifteen-month hiatus between crime and
arrest to prejudice appellant and gain a tactical
advantage.  The embarrassment of the
misidentification forced them to strike a balance
between an intense investigation and a gentle
handling of Jane Moran.  This approach was not only
an attempt to assure the propriety of prosecution,
but to justify the expense of criminal proceedings
and to have the actual murderer answer the charges.
We do not lightly dismiss the loss of his alleged
alibi witness, but we remind appellant that the delay
also served his interests as officials exhausted all
means to assure arrest of the correct man.
Furthermore, inasmuch as Glenn Keene was a
corroborative witness only, his death did not
preclude new and exonerating evidence.  Therefore, we
conclude that the delay was justified and any

16

prejudice incurred by appellant did not outweigh the
benefits of an assiduous investigation.

480 A.2d at 1073-1076.

The state court applied the correct legal principles and
its conclusion that the petitioner's due process rights were
not violated by the investigative delay was reasonable.  Thus,
the state courts' adjudication did not result in a decision
that was contrary to, or that involved an unreasonable
application of, clearly established Federal law, as determined
by the Supreme Court of the United States, or that resulted in
a decision that was based on an unreasonable determination of
the facts in light of the evidence presented in the State court
proceeding.  Accordingly, the petitioner is not entitled to
habeas relief on this claim.

The petitioner's second claim is that the state court
erred in failing to suppress an inculpatory statement made by
the petitioner at the visiting room of the county jail.

17

On June 3, 1979, Al Raymond came to the Bradford County Jail to visit the petitioner, who at the time was incarcerated on charges unrelated to the instant case. (Tr. 554-555). Phillip Shamoun, a prison guard who was sitting approximately twenty feet from the petitioner and Raymond, heard the petitioner tell Raymond to bury the weapon. (Tr. 558). The prison guard contacted the police, and the police later seized a gun from Raymond, who testified that he had previously lent the gun to the petitioner. (Tr. 560, 591, 525). Ballistic tests revealed that the bullets taken from the body of Phillip Evans had been fired from that gun. (Tr. 753-55).

The petitioner argues that he had a legitimate expectation of privacy in his discussion at the prison with Al Raymond and that the prison guard listening to the conversation violated his Fourth Amendment rights.

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held that where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state

18

prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial. 428 U.S. at 494.

The record in the instant case establishes that in the state court the petitioner was given the opportunity for full and fair litigation of his Fourth Amendment claim.  A pre-trial hearing was held regarding *inter alia* this issue.  The petitioner's Fourth Amendment claim was considered by the trial court and by the Pennsylvania Superior Court.

We conclude that the petitioner's Fourth Amendment claim is barred by *Stone*.

The Commonwealth did not raise the *Stone* bar but addressed the issue on the merits.

The Superior Court of Pennsylvania reasoned and decided the issue as follows:

> Appellant also argues that the lower court erred in not suppressing the .22 caliber rifle and

19

cardboard box. He objects to the intrusion by a
Bradford County correction officer into his private
conversation with Albert Raymond in the visitor's
area of the Bradford County Jail.  This intrusion
alerted investigating officers to the whereabouts of
the murder weapon.

On June 3, 1979, Phil Shamoun, a correction
officer at the Bradford County Jail, was doing paper
work at a desk located twenty feet from the visitor's
area.  Mr. Shamoun testified that he overheard
appellant instruct his visitor, Albert Raymond, to
bury the .22 caliber sawed-off rifle.  Shamoun was
familiar with appellant's voice, and he knew that
Raymond was appellant's visitor.  Shamoun contacted
the Pennsylvania State Police barracks at Towanda a
few minutes after overhearing the conversation.  A
cardboard box housing the weapon was retrieved by
Troopers Perechinsky, Petti and Lt. Bloomer from
Raymond's garage later that day.  Raymond informed
the officers that he loaned the rifle to him in
April, 1979, and that he learned from appellant on
June 3, 1979 that Lulu Felicita, appellant's
girlfriend, had possession of the weapon.  Raymond
recovered it from Felicita later that day, prior to
releasing it to the officers.

Appellant introduced evidence that Mr. Shamoun
was not scheduled to work on June 3, 1979, and that
there was no time card to reflect his working that
day.  Phil Shamoun admitted that Trooper John George
instructed him to remain attentive to any
conversation engaged in by appellant.  Appellant
deduces from this information that Shamoun was within
the jail on June 3, 1979 for the purpose of
eavesdropping, not to report for regular assignment.

The issue presented here is whether appellant's
Sixth Amendment right to assistance of counsel and
Fourth Amendment protections against unreasonable
search and seizure were violated by the admission
into evidence of the murder weapon and of appellant's

20

incriminating conversation with Albert Raymond at the jail.

Since Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), unreasonable search and seizure is not restricted to actual physical penetration of a person's curtilage.  Eavesdropping may rise to the level of physical intrusion, although it need not be equated with property law trespass. In United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), the defendant was detained in a Norfolk, Virginia jail pending a charge of armed robbery.  An inmate of the jail became a confidential informant for the Federal Bureau of Investigation.  He was directed to remain alert to statements of the defendant, but not to initiate a conversation with him concerning the pending charge. When the informant was released from jail, he informed an F.B.I. agent of the defendant's admission to the armed robbery.

In holding the informant's activities to be an infringement upon the defendant's right to counsel, the Henry court noted the informant's paid assignment, the informant's cover as a fellow-inmate of the defendant and the defendant's incarceration under indictment at the time of the incriminating statement.  Particularly irksome to the Henry court was the informant's impetus to produce useful information due to his assignment on a contingent-fee basis.  Therefore, the court was unimpressed with an F.B.I. agent's instructions to the informant not to actively seek conversation with the defendant concerning the robbery.  The court also noted the likelihood that an accused would speak more freely without counsel to a confrere, doubling as an informant, than to a known law enforcement officer. Finally, the defendant's incarceration was viewed as a mechanism to promote free conversation and association with an inmate ostensibly sharing a similarly undesirous confinement.

21

Appellant would have us subscribe to the Henry
analysis and grant a new trial.  We do not think
Henry to be controlling.  Instead, we find this
matter more closely resembling the issues addressed
in Hoffa v. United States, 385 U.S. 293, 87 S.Ct.
408, 17 L.Ed.2d 374 (1966), reh. den., 386 U.S. 940,
951, 87 S.Ct. 970, 17 L.Ed.2d 880 (1967).  While
Teamster's President James Hoffa occupied a suite in
a Nashville hotel during his trial on charges of
violating the Taft-Hartley Act, a Teamster Union
official from Louisiana frequently visited him.  This
official superficially sought Hoffa's advice on local
union problems, when in fact he was surreptitiously
gathering information for federal agents regarding
Hoffa's attempts to tamper with the jury.  Based upon
several incriminating statements made by Hoffa to the
union official, Hoffa was convicted of attempting to
bribe members of the jury.

The Hoffa court first rejected the Fourth
Amendment challenge.  The court conceded that the
informant was working for the government from the
moment he arrived in Nashville.  It also recognized
that Fourth Amendment protections extend beyond the
home and tangible evidence to hotel rooms and oral
statements.  What the court found dispositive,
however, was the absence of a legitimate Fourth
Amendment protection.

Hoffa was not relying upon the sanctity of his
hotel room when he incriminated himself.  The
informant was Hoffa's guest, and every word was
directed to him or uttered in his presence.  The
incriminating statement, therefore, was the result of
Hoffa's misplaced confidence in the informant.  The
Sixth Amendment challenge was rejected due to the
fact that incriminating statements regarding bribery
of jurors were unrelated to the pending charges of
Taft-Hartley violations.

Here, appellant's instructions to Raymond to
bury the weapon were not issued in direct
conversation with an informant.  They were issued

22

freely with the purpose of concealing evidence of a crime for which he was not yet charged.  As in Hoffa, appellant did not expect Fourth Amendment protections when he spoke with Raymond in the visitors' area. Testimony demonstrated that a partition with a small perforated section for speaking separated visitors and inmates.  Due to the noise from the general population in the cell block, the inmate often spoke loudly to his visitor.  He did not occupy a separate room;  instead, he stood before the visitors' partition at one end of the cell block.  Just as Hoffa had misplaced his trust in the union official, appellant misplaced his trust in the visitors' area of the cell block.

Although we must recognize that Shamoun was instructed to remain alert and that he overheard appellant's incriminating statements on a non-scheduled workday, there was testimony that Shamoun was present for the purpose of instructing a new employee on the operating procedures of the visitors' area.  He did not engage in conversation with appellant in an attempt to elicit useful prosecution material.

In addition to having no expectation of Fourth Amendment privileges in the visitors' area, appellant has no justifiable complaint that his Sixth Amendment right to counsel was violated.  As in Hoffa, he was not yet charged with the Evans/Moran crimes.  His attorneys in the Sharon Smith case were not present, and the incriminating statements were wholly unrelated to that pending proceeding.  Without Fourth and Sixth Amendment expectations at the time Phil Shamoun overheard appellant's incriminating statements, the murder weapon was properly admissible.

480 A.2d at 1078-1080.

AO 72A
(Rev 8/82)

Were we to address the claim on the merits, we would conclude that the state courts' adjudication did not result in a decision that was contrary to, or that involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The petitioner's final two claims are claims that his trial counsel rendered ineffective assistance of counsel.

A claim of ineffective assistance of counsel requires a two part analysis.  First, the petitioner must establish that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  There is a strong presumption that counsel's conduct falls within the range of reasonable professional assistance. *Nix v. Whiteside*, 475 U.S. 157, 165 (1986).  Counsel's performance should be viewed from counsel's perspective at the

24

time without the distorting effects of hindsight. *Duncan v. Morton*, 256 F.3d 189, 200 (3d Cir. 2001). "[T]here is no general duty on the part of defense counsel to anticipate changes in the law." *Id*. at 202 (quoting *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996). Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. To establish prejudice the petitioner must show that there is a reasonable probability that but for counsel's errors the result of the proceeding would have been different. *Strickland*, *supra*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "It is only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." *George v. Sively*, 254 F.3d 438, 443 (3d Cir. 2001)(quoting *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989)).

25

The petitioner contends that his trial counsel was ineffective for failing to present a diminished capacity defense.

The Pennsylvania Superior Court address the issue as follows:

> In a post-conviction proceeding, in order to prevail on a claim of ineffective assistance of counsel, a petitioner must establish that the truth-determining process was so undermined that no reliable adjudication of his or her guilt or innocence could have taken place. *Commonwealth v. Kimball*, __ Pa. __ , __ A.2d __ (No. 38 M.D. Appeal Docket 1997, filed January 22, 1999.) "This requires the petitioner to show: (1) that the claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." *Id.*, slip op. at 15.
>
> Appellant first contends that there was significant evidence at trial of his drug and alcohol use around the time of the incident, and his trial counsel was ineffective for failing to use it to pursue a diminished capacity defense. He argues this defense would have affected the outcome of his trial by reducing his conviction from first to third degree murder.
>
> Our Supreme Court recently had the opportunity to review this argument in a case where the petitioner was also convicted of first degree murder. In *Commonwealth v. Laird*, __ Pa. __, __ A. 2d __, 1999 Pa. LEXIS 525 (filed March 1, 1999), the

26

petitioner alleged his trial counsel was ineffective
for failing to pursue a diminished capacity defense
based on his mental and emotional state as well as
his intoxication on the night of the murder.  The
Supreme Court rejected this argument as follows:

> Petitioner's allegation of ineffectiveness
> cannot be answered by a showing that there
> is arguable merit to his claim that a
> defense of diminished capacity could have
> been mounted in this case.  Instead the
> focus of this allegation of ineffectiveness
> is on whether the course chosen by counsel,
> in not presenting a defense of diminished
> capacity was reasonable.
> A defense of diminished capacity is only
> available to a defendant who admits
> criminal liability but contests the degree
> of guilt.  A defense of diminished capacity
> would directly contradict the sworn
> testimony of petitioner.

1999 Pa. LEXIS 525, *17-18(citations omitted.)

In the case at bar, appellant has not ever
admitted criminal liability.  He acknowledged at his
hearing before the trial court that he testified to
an alibi at trial.  As did the petitioner in *Laird*,
appellant is asking the court to assume he committed
perjury at his trial.  "Trial counsel cannot be found
ineffective for failing to pursue a trial strategy
that is in direct conflict with his client's sworn
testimony."  *Id*. at *19.   We therefore conclude this
argument has no merit.

*Commonwealth v. Arnold*, No. 1121 Harrisburg, 1998, slip op. at

4-5 (Pa.Super.Ct. Apr. 14, 1999).

27

The state court applied the correct legal principles and its conclusion that the petitioner's trial counsel was not ineffective for failing to present a diminished capacity defense is reasonable.  Thus, the state courts' adjudication did not result in a decision that was contrary to, or that involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Accordingly, the petitioner is not entitled to habeas relief on this claim.

The petitioner's final claim is that his trial counsel was ineffective for failing to object to the testimony of Jane Moran's psychologist who testified as to the reason why Moran was not able to identify her assailant.

The Pennsylvania Superior Court decided the issue as follows:

> Next appellant contends trial counsel was
> ineffective for failing to object to the testimony of

28

AO 72A
(Rev.8/82)

the psychologist, because it impermissibly bolstered
the credibility of Ms. Moran.  Generally, the
admission of expert testimony is a matter left to the
sound discretion of the trial court. *Commonwealth v.
Petrovich*, 538 Pa. 369, 648 A.2d 77 (1994).  Expert
testimony is appropriate where the subject matter
presented is beyond the knowledge, information, and
skill of the average juror.  *Commonwealth v. Montavo*,
653 A.2d 700 (Pa. Super. 1995).

It is true, as appellant concedes, that
admission of expert testimony relating to credibility
of witnesses is an issue which has recently been
presented to Pennsylvania's appellate courts with
increasing frequency, particularly in the years since
appellant's conviction.  Appellant cites only one
case involving expert psychological testimony which
was decided prior to his trial in 1981, *Commonwealth
v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976).  There,
the trial court refused to allow the testimony of a
defense psychologist "that the accused did not intend
to kill the victim.  This evidence was offered solely
to corroborate the defendant's version of events,
that the killing was accidental.  The trial court's
refusal to allow testimony of the clinical
psychologist was affirmed because "the testimony
sought to be admitted did not touch upon the
psychological likelihood of [] behavior under a given
stimulus."  466 Pa. at, 352 A.2d at 32. *O'Searo*'s
application to the psychological evidence presented
at appellant's trial is limited at best.

Several cases decided since *O'Searo* have
rejected the use of an expert to explain a behavior
pattern of a victim as consistent with other victims,
because such an opinion improperly invades the jury's
province. *See, e.g., Commonwealth v. Spence*, 534 Pa.
233, 627 A.2d 1176 (1993); *Commonwealth v. Gallagher*,
519 Pa. 291, 547 A.2d 355 (1988); *Commonwealth v.
Emge*, 553 A.2d 74 (Pa. Super. 1988).  While it is not
clear whether such an argument to exclude the

29

psychologist's testimony would be supported even today, *see, e.g.,, **Commonwealth v. Crawford**,* __ Pa. __, 718 A.2d 768 (1998), the issue presented in this appeal is whether counsel was effective in 1981. Based upon a review of the case law, appellant has not established that the counsel's failure to object to the psychologist's testimony at his trial was unreasonable. Counsel cannot be deemed ineffective for failing to anticipate changes in the law or to raise claims based on future decisions. ***Commonwealth v. Cox***, 546 Pa. 515, 686 A.2d 1279 (1996), ***cert. denied***, __ U.S. __, 139 L.Ed.2d 407, 118 S.Ct. 567 (1997). We therefore conclude this argument is also without merit, and that appellant is not entitled to post conviction relief.

*Commonwealth v. Arnold*, No. 1121 Harrisburg, 1998, slip op. at 5-7 (Pa.Super.Ct. Apr. 14, 1999).

The state court applied the correct legal principles and its conclusion that the petitioner's trial counsel was not ineffective for failing to object to the psychologist's testimony as to the reason Jane Moran was unable to identify her assailant is reasonable. Thus, the state courts' adjudication did not result in a decision that was contrary to, or that involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or a decision that was based on an

30

unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Accordingly, the petitioner is not entitled to habeas relief on this claim.

In addition to arguing that his trial counsel was ineffective for failing to object to the psychologist's testimony as to the reason Jane Moran was unable to identify her assailant the petitioner argues that trial counsel was ineffective by failing to object to the psychologist giving her opinion that Moran was truthful in her testimony.  The psychologist did testify that she thought Moran was telling the truth. (Tr. 514).

Although the claims are very similar, it does not appear that the petitioner presented this precise claim to the state courts as opposed to the claim that counsel was ineffective for failing to object to the psychologist's testimony as to the reason Jane Moran was unable to identify her assailant.  *See Petition for Allowance of Appeal to the Pennsylvania Supreme Court.*  Therefore, not suprisingly, the state courts have not

31

AO 72A
(Rev.8/82)

addressed this precise issue.   It is our opinion that this claim has been procedurally defaulted.

If we were to address the claim, we would conclude that the pychologist's testimony that Jane Moran was testifying truthfully was objectionable as an usurpation of the function of the jury to determine credibility.  However, the petitioner has not established that he was prejudiced, that is that there is a reasonable probability that the outcome of the trial would have been different, by counsel's failure to object to this testimony.  Given the other evidence of the defendant's guilt, including his link to the murder weapon and the fact that the police found Phillip Evans' wallet insert in the petitioner's home, we conclude that the petitioner can not establish prejudice.

AO 72A
(Rev.8/82)

Based on the foregoing, it is recommended that the petition for a writ of habeas corpus be denied and that the case file be closed.

J. Andrew Smyser
Magistrate Judge

Dated: September 7, 2001.

33

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DALE ARNOLD,                          :        CIVIL NO. **1:00-CV-0775**
                                      :
             Petitioner      :        (Judge Kane)
                                      :
     v.                          :        (Magistrate Judge Smyser)
                                      :
KENNETH D. KYLER,                     :
             Respondent     :

**FILED**
**HARRISBURG, PA**

SEP 0 7 2001

MARY E. D'ANDREA, CLERK
PER _____ DEPUTY CLERK

## <u>NOTICE</u>

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3 of the Rules of Court, M.D.Pa., which provides:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. §636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition **within ten (10) days** after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

J. Andrew Smyser
Magistrate Judge

Dated: *September 7, 2001.*

AO 72A
(Rev.8/82)

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

* * MAILING CERTIFICATE OF CLERK * *

September 7, 2001

Re:  1:00-cv-00775    Arnold v. Frank

True and correct copies of the attached were mailed by the clerk
to the following:

      Dale Arnold
      SCI-H
      SCI at Huntingdon
      AK-5044
      1100 Pike Street
      Huntingdon, PA  16654-1112

      Daniel Isaiah Siegel, Esq.
      100 Chestnut St.
      Suite 306
      Harrisburg, PA  17101

      Stephen G. Downs, Esq.
      District Attorney's Office
      Bradford County Courthouse
      301 Main Street
      Towanda, PA  18848

      Todd K. Hinkley, Esq.
      District Attorney's Office
      Bradford County Courthouse
      301 Main Street
      Towanda, PA  18848

      Ronald T. Williamson, Esq.
      Office of Attorney General
      Appeals and Leal Services Section
      2490 Boulevard of the Generals
      Norristown, PA  19403   Fax No.: (61) 631-5944

```
cc:
Judge                     ( )                ( ) Pro Se Law Clerk
Magistrate Judge          ( )                ( ) INS
U.S. Marshal              ( )                ( ) Jury Clerk
Probation                 ( )
U.S. Attorney             ( )
Atty. for Deft.           ( )
Defendant                 ( )
Warden                    ( )
Bureau of Prisons         ( )
Ct Reporter               ( )
Ctroom Deputy             ( )
Orig-Security             ( )
Federal Public Defender   ( )
Summons Issued            ( )  with N/C attached to complt. and served by:
                               U.S. Marshal ( )    Pltf's Attorney ( )

Standard Order 93-5       ( )
Order to Show Cause       ( )  with Petition attached & mailed certified mail
                               to:  US Atty Gen   ( )   PA Atty Gen ( )
                                    DA of County  ( )   Respondents ( )
Bankruptcy Court          ( )
Other _____proposed order__ (X)

                                    MARY E. D'ANDREA, Clerk


DATE: ___9/7/01_____        BY: _____
                                         Deputy Clerk
```